**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph James SANFILIPPO,**
**Defendant-Appellant.**

**No. 76–4170.**

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1977.

Richard M. Gale, Michael A. Masin, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Michael P. Sullivan, James E. McDonald, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and RONEY and FAY, Circuit Judges.

---

RONEY, Circuit Judge:

Joseph James Sanfilippo's conspiracy, possession, and distribution convictions grew out of a single cocaine transaction involving two other defendants. One defendant was acquitted. The other defendant entered a bargained for guilty plea, and then testified against Sanfilippo. Because the prosecutor allowed that testimony to go to the jury upon a misrepresentation as to the substance of the plea bargain, the truth of which would be material to credibility of the witness, we reverse.

The facts pertinent to this appeal concern the conduct of the trial. Pursuant to a standing discovery order, the Government advised Sanfilippo's counsel by letter prior to trial: "Modesto Mori will be a witness for the Government and in return he will not be prosecuted in the *Ellswick* case; the Government will make all cooperation known to Judge Atkins at the time of Mori's sentencing; he will not be filed against as a second offender."

On direct examination of Mori, the prosecutor brought out Mori's prior state convictions for conspiracy to commit murder and for dealing in cocaine. Mori also testified on direct examination that the Government had agreed to make his cooperation in this case known to the judge and that he had already been sentenced to 18 months imprisonment.

On cross-examination, the attorney for the codefendant futilely attempted to elicit the terms of the prosecution's promise to dismiss all but one count in this case and not to prosecute him in the *Ellswick* case:

Q   And as part of the situation here, you agreed to cooperate with the government in exchange for certain promises made by them, isn't that correct?

A   The only promise by the government was that the judge would be made aware of my cooperation.

        *    *    *    *    *    *

Q   Mr. Mori, the only promise was that your cooperation would be made known to this Court; is that what you're telling us, sir?

A   Yes, sir.

Q   Well, didn't the government promise you that they would dismiss the remaining counts against you?

A   Well they said they were going to prosecute on this one count.

Q   Didn't they tell you that, that they were going to dismiss the remaining counts?

A   I was aware of that not two months before the trial.

Q   Didn't the government also say that you would not be treated as a second offender, meaning that your penalties would be doubled?

A   They said that they would not file a second offender charge, yes sir.

Q   And didn't the government also say that you would not be indicted in the Ellswick case which involves over one thousand pounds of marijuana?

A   I have not been indicted on that, but I haven't discussed it with the agents.

Q   Didn't the United States Attorney promise that as part of the plea agreement that you would not be indicted in that case?

A   I was informed that I haven't been indicted in that case, but I haven't discussed that.

Q   As part of the plea agreement, didn't Mr. Ferguson state that you would not be indicted in that case?

A   If I give you any definite answer, put a stress on anything, I would not be telling it to the best of my recollection, let me put it that way. I let my attorney handle it.

Q   Well that is what Mr. Ferguson has told us.

A   I don't believe you want me to tell you something that I really can't recall and be positive about.

Further attempts by defense counsel to elicit the Government's promise not to prosecute in the *Ellswick* case proved equally futile.

The prosecution knew that Mori's testimony regarding the terms of his plea bargain was false in at least two respects:

*first*, Mori had in fact been promised immunity in the *Ellswick* case in return for his testimony against defendants Sanfilippo and Davis, and *second*, negotiations with the prosecutor regarding the plea bargain had been handled directly by Mori, not by his attorney. Yet the prosecutor stood silent.

■ Due process is violated when the prosecutor, although not soliciting false evidence from a Government witness, allows it to stand uncorrected when it appears. That the false testimony goes only to the credibility of the witness does not weaken this rule. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). In these cases the prosecutor had failed to disclose prior to trial information which would have revealed to the defense that the Government's witness was testifying falsely. Here, weeks before trial, the prosecutor satisfied his obligation under *Giglio* to fully disclose the terms of the plea bargain. *See Giglio v. United States, supra.* The purpose of disclosing the terms of a plea bargain is to furnish defense counsel with information which will allow him to attack the credibility of the witness. The defendant gains nothing, however, by knowing that the Government's witness has a personal interest in testifying unless he is able to impart that knowledge to the jury.

The Government argues that Mori's prior convictions sufficiently impeached his credibility so that the plea agreement would add nothing. The fact that the history of a witness shows that he might be dishonest does not render cumulative evidence that the prosecution promised immunity for testimony. A jury may very well give great weight to a precise reason to doubt credibility when the witness has been shown to be the kind of person who might perjure himself. Had the jury known of the Government's promise regarding the *Ellswick* case, conditioned as it was on Mori's testifying against Sanfilippo, it might well have reached a different decision as to whether Mori had fabricated testimony in order to protect himself against another criminal prosecution.

Mori's testimony was important. The drug transaction leading to Sanfilippo's conviction was conducted through Mori. Although Sanfilippo had discussed a cocaine deal with the Government agents, it was Mori's testimony that affirmatively linked Sanfilippo to the contraband involved in this case. Belief in the truth of Mori's testimony was crucial to a necessary link in the chain of proof.

The Government argues that defense counsel could have apprised the jury of the promise by requesting an evidentiary hearing on the admissibility of the letter received from the Government, by subpoenaing Mori's attorney to testify to his understanding of the agreement struck between Mori and the Government, or perhaps by calling upon the Government to stipulate to the correct facts. These tools being available to the defendants, the question is whether the Government is relieved of responsibility.

■ The cases hold that the duty to correct the false testimony of a Government witness is on the prosecutor. That duty arises "when [the false evidence] appears." *Napue v. Illinois*, 360 U.S. at 269, 79 S.Ct. 1173. Although it would appear that the prosecutor may have been obliged to step forward and set the record straight when Mori persisted in misrepresenting the Government's promise despite repeated efforts by defense counsel to elicit the truth, we need not ground reversal solely on the failure to perform that duty.

Coupled with the failure to correct Mori's false testimony at the time was the prosecutor's capitalizing on it in his closing argument. In an apparent attempt to minimize the effect of the plea bargain on Mori's credibility, the prosecutor stated:

Upon the arrest of Mori he agreed to cooperate with the government, because quite admittedly he probably saw this was his third time around, and being that he was going back to jail, he wanted to cooperate. You know, let us call a spade

a spade here. That is what happened. Mori had his own interests in mind. Is there any real question about that? So he decided to cooperate. Do you recall the promise by the government? I represent the government. That gentlemen right there represents the government. "Mori, if you cooperate, we are going to make your cooperation known to the court." There was no mention about how long Mori was going to go to jail. He had absolutely no guarantee because his sentence was one hundred percent left up to His Honor. We merely advised the proper authorities as to how he helped us out. As a matter of fact Mori had already been sentenced by the time he got in this stand and told you what happened. He had already been sentenced by the court. There was absolutely nothing hanging over his head. He could have refused. I mean he already got his part. The cooperation was made known. We lived up to our part of the deal and His Honor gave him a sentence of eighteen months. I mean, he really didn't have to.

 The prosecutor's representation that Mori had been sentenced, that there was absolutely nothing hanging over his head, and he could have refused to testify without losing his part of the bargain was in keeping with Mori's testimony, but the argument was inconsistent with the agreement that Mori would be a witness for the Government and *in return* he would not be prosecuted in the *Ellswick* case. Mori had the *Ellswick* prosecution "hanging over his head." If he did not testify, presumably he would have been prosecuted in that case. If he did testify, he would not be prosecuted. One can hardly imagine a more compelling fact that the jury should have in order to properly evaluate whether a witness of doubtful credibility was in fact being credible in his trial testimony. Thus the Government not only permitted false testimony of one of its witnesses to go to the jury, but argued it as a relevant matter for the jury to consider. Whether either instance alone would merit reversal, we need not decide, for together they do.

REVERSED AND REMANDED FOR A NEW TRIAL.