UNITED STATES of America

v.

Jaynell M. IVERSON, Appellant.

No. 79–1231.

United States Court of Appeals,
District of Columbia Circuit.

April 3, 1981.

On Petition for Rehearing.

Before BAZELON, Senior Circuit Judge, TAMM, Circuit Judge, and HAROLD H. GREENE *, Judge, United States District Court for the District of Columbia.

ORDER

PER CURIAM.

On consideration of appellee's petition for rehearing, filed January 7, 1981, it is

* Sitting by designation pursuant to Title 28 U.S.C. § 292(a).

ORDERED by the Court that the aforesaid petition is denied.

TAMM, Circuit Judge, would grant the petition for rehearing.

The statement of Judge Greene concerning the denial of rehearing is attached. The statement also modifies the opinion in some respects. Judge Bazelon joins in Judge Greene's statement.

## ON PETITION FOR REHEARING

HAROLD H. GREENE, District Judge, sitting by designation.

While a rehearing is not warranted, one of the matters raised in the government's petition has sufficient merit to call for modification of our Opinion. We previously noted[1] that the record is unclear on the question of defense counsel's knowledge of the sentencing status of the government's principal witness but that, in any event, the prosecutor had an independent responsibility to alert the court and jury to the truth. The petition for rehearing asserts that the cases have limited application of the *Giglio-Napue* doctrine[2] to situations in which the defense counsel was unaware of plea agreements made with prosecution witnesses, and it suggests that the case be remanded for an evidentiary hearing on the issue of defense counsel's knowledge. Although the government's formulation of the *Giglio-Napue* rule is unduly restrictive, we agree that, in view of the unusual circumstances of this case,[3] a remand for the purpose of an inquiry into counsel's knowledge is in order.

The early decisions dealing with the prosecutor's responsibility to disclose exculpatory information generally proceeded on the assumption that defense counsel had no knowledge of the critical information.[4] Since then, the doctrine has been expanded to include situations in which the defense counsel, although possibly aware of the relevant information, was unable, as a practical matter, to use it to cast doubt upon contrary evidence proffered by the government or its witnesses.[5] On the other hand, other recent decisions have indicated that no violation of due process results from prosecutorial nondisclosure if defense counsel both knows of the information and is able to make use of it but still chooses, for tactical reasons, not to do so.[6] Indeed, the Court of Appeals for the Seventh Circuit aligned itself with this position in an opinion issued since our decision was rendered in the instant case.[7]

■ We believe the distinction made by the cases to be a sound one, and accordingly

1. Majority opinion, 637 F.2d 799, p. 803 n. 10.

2. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. People of the State of Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

3. The case is not the usual one involving a plea agreement but rather it concerns the sentencing status of the principal prosecution witness—information at least potentially available to anyone.

4. *E. g., Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giglio v. United States, supra.*

5. *See, e. g., United States v. Sanfilippo,* 564 F.2d 176, 178 (5th Cir. 1977) ("The purpose of disclosing the terms of a plea bargain is to furnish defense counsel with information which will allow him to attack the credibility of the witness. The defendant gains nothing, however, by knowing that the Government's witness has a personal interest in testifying unless he is able to impart that knowledge to the jury"); *United States v. Barham,* 595 F.2d 231, 243–44 n. 17 (5th Cir. 1979) (prosecutor reinforced deception).

6. *See, e. g., United States v. Meinster,* 619 F.2d 1041 (4th Cir. 1980).

7. *Ross v. Heyne,* 638 F.2d 979 at 986 (7th Cir. 1980). The Court there said,

the fact that the alleged statement was known to petitioner and his counsel during the trial compelled petitioner to raise this issue then or not at all. When a criminal defendant, during his trial, has reason to believe that perjured testimony was employed by the prosecution, he must impeach the testimony at the trial, and "cannot have it both ways. He cannot withhold the evidence, gambling on an acquittal without it, and then later, after the gamble fails, present such withheld evidence in a subsequent proceeding . . . ."

we hold that, absent unusual circumstances,[8] the right of the defendant to disclosure by the prosecutor is deemed waived if defense counsel with actual knowledge of the plea agreement or sentencing status information chooses not to present such information to the jury.[9] It bears repeating, however, that the primary obligation for the disclosure of matters which are essentially in the prosecutorial domain lies with the government, and that, should defense counsel be precluded by circumstances essentially beyond his control (*e. g.*, inaccessibility at the time of trial of the information or refusal of the trial court to permit inquiry into the matter) from raising or pursuing the issue, the *Giglio-Napue* rule strictly applies and due process mandates a new trial.

The case is remanded to the District Court, which is directed to hold an evidentiary hearing to determine both the degree to which defense counsel had knowledge of the true facts concerning the witness's sentencing status and counsel's basis for failing to pursue the matter after appearing first to raise it.[10] In the event that the court finds that counsel deliberately chose to forgo further pursuit of the issue, the conviction will stand. If counsel's failure to clear up the false impression left by the prosecution's witness stemmed from circumstances beyond his control,[11] defendant, for the reasons stated in our earlier Opinion, will be entitled to a new trial.

*So ordered.*

---

8. For example, in the *Ross* case, *supra*, the court reversed because the defendant, as distinguished from his counsel, did not learn that the testimony was false, and his counsel failed to correct the testimony "not because of any conscious defense strategy" (at 986) but because he wanted to avoid a conflict of interest with his law partner who had represented the witness who testified falsely.

9. This Opinion does not decide whether due process requires a new trial when the defense counsel did not know, but should have known, about the false evidence, as, for example, when the matter is on the public record. It is possible, of course, that such a situation could merit a finding of ineffective assistance of counsel.

10. As the government's petition points out, defense counsel at one point alluded to the possibility that the witness may, in fact, have been awaiting sentencing at the time of appellant's trial. However, he then abandoned the subject, and the court and the jury were presumably left with the impression that the witness had already been sentenced. That impression was strengthened when the prosecutor, in his summation, made a wholly incorrect reference to the witness' sentencing status. While we do not doubt that the particular Assistant U.S. Attorney was acting in good faith, he had an obligation to ascertain the true facts concerning his principal witness and not to misstate them to the jury. Our failure to remand directly for a new trial should not be taken as an endorsement of this conduct.

11. Although the purpose of remand is to ascertain what defense counsel knew about Susan Johnson's sentencing status when he cross-examined her, we do not necessarily limit the trial court to receiving testimony from defense counsel. If it appears appropriate, an inquiry into the defense counsel's knowledge of Ms. Johnson's status could include matters such as how a potential witness's sentencing status is usually determined and how it was ascertained in this case, whether defense counsel could have reasonably relied on the sentencing information in the public record or was instead dependent upon the prosecutor, and whether the correct information was available from the prosecutor's office.