907 F.2d 151
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert THOMPSON, Petitioner-Appellant,
v.
Dale FOLTZ, Respondent-Appellee.
 No. 89-2195.
 United States Court of Appeals, Sixth Circuit.
 July 6, 1990.
 
 Before NATHANIEL R. JONES and KRUPANSKY, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Petitioner-appellant, Robert Thompson, appeals the order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. For the following reasons, we affirm.
 
 I.
 
 2
 Thompson has been tried three times in the Saginaw (Michigan) Circuit Court for murder during an armed robbery which occurred in September of 1974. Prior to Thompson's indictment, the State granted immunity to Robert Smith, his alleged accomplice in the robbery in exchange for Smith's testimony against Thompson. At the preliminary examination hearing, Smith testified that he had witnessed Thompson committing the murder. Smith could not be located at the time of Thompson's first trial in August of 1975, therefore, his preliminary examination testimony was introduced into evidence. The jury subsequently returned a guilty verdict against Thompson for first-degree felony murder.
 
 
 3
 The Michigan Court of Appeals reversed the jury verdict because of improper jury instructions and remanded for a new trial. People v. Robert G. Thompson, 81 Mich.App. 348, 265 N.W.2d 632 (1978), aff'd sub. nom., People v. Aaron, 409 Mich. 672, 299 N.W.2d 304 (1980). Smith, who was in the custody of the Michigan authorities at the time of the second trial, refused to testify. The State presented its case against Thompson without putting Smith on the stand. Thompson twice moved for a judgment of acquittal based upon the State's alleged failure to present sufficient evidence to support a conviction. The court denied both motions and sent the case to the jury. When the jury was unable to reach a verdict, the trial judge declared a mistrial.
 
 
 4
 As a consequence of the mistrial, the State petitioned the court to revoke Smith's immunity and hold him in contempt of court for failing to testify at either of the first two trials. In June of 1981, the trial court denied the State's petition to revoke Smith's immunity and held that the proper remedy for Smith's conduct under Michigan law was contempt of court. Subsequently, the State and Smith entered into an agreement providing that Smith would acquiesce in the contempt proceedings, in exchange for the State not appealing the trial court's immunity revocation ruling. Thompson's counsel was not present during any of the proceedings or meetings concerning Smith's failure to testify.
 
 
 5
 Thompson's third trial took place in October of 1981. Smith testified that he witnessed Thompson commit the murder during the robbery, and the jury again returned a guilty verdict. The Michigan Court of Appeals subsequently affirmed the jury verdict. In a split decision, the Michigan Supreme Court also affirmed Thompson's conviction. People v. Thompson, 424 Mich. 118, 379 N.W.2d 49 (1985). The majority held that Thompson was not subjected to double jeopardy by being tried for a third time after the second trial resulted in a mistrial, and that Thompson was not entitled to appellate review of his claim based on the sufficiency of the evidence at his mistrial under the Due Process Clause of the Fourteenth Amendment or under the due process provisions of the Michigan Constitution.
 
 
 6
 Having exhausted his state remedies, Thompson filed the instant petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254 (1982), arguing that the third trial subjected him to double jeopardy and that the trial court erred in denying his motions for judgment of acquittal at the second trial. Thompson further argued that his due process rights were violated by (1) permitting Smith to testify at the third trial when he had been available to testify at the second trial; (2) the State's attempt to revoke Smith's immunity; and (3) the State's alleged failure to disclose to defense counsel the attempted revocation of Smith's immunity and contempt proceedings against him. On April 6, 1987, the district court denied Thompson's habeas petition, holding that both his double jeopardy and due process claims were foreclosed under Richardson v. United States, 468 U.S. 317 (1984). In addition, the district court ruled that (1) Smith's testimony at the third trial did not deprive Thompson of due process; (2) Smith was not coerced to testify; and (3) the State did not fail to disclose exculpatory evidence to defense counsel.
 
 
 7
 On appeal, this court ruled that the district court correctly held that Thompson's double jeopardy challenge was foreclosed and that Thompson was not entitled to state review of the trial court's denial of his motions for acquittal at the mistrial. Thompson v. Foltz, Unpublished No. 87-1415 (6th Cir., Jan 18, 1989) (per curiam) ("Thompson I"). However, the court was unable to determine from the record whether counsel for Thompson knew of the revocation and contempt proceedings against Smith, and remanded to the district court with instructions to hold an evidentiary hearing on the question of whether the State violated Thompson's due process rights under Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose to defense counsel the immunity revocation and contempt proceedings.
 
 
 8
 On August 14, 1989, the evidentiary hearing was conducted before Judge George LaPlata. Three witnesses testified: Patrick Meter, the assistant prosecutor who retried Thompson in 1981; Robert Loucks, who was Thompson's counsel through the first retrial in 1988; and George Bush, who was appointed as Thompson's counsel on August 6, 1981 and who represented him through his third trial. In a Memorandum and Opinion entered on September 13, 1989, the district court found that Thompson, Bush and Loucks all knew of the State's unsuccessful attempt to revoke Smith's immunity. The court also concluded that at the time of the third trial, Bush did not know that Smith had testified under oath at the revocation hearing, and that Smith had pled guilty to and was sentenced for contempt of court. The court also found that the contempt proceedings were entered in the court docket and file of the instant case which Bush failed to review. However, the court found that even if Bush did not know that Smith testified on June 15 at the revocation hearing and was sentenced for contempt of court on June 26, that potential impeachment evidence was not material. The district court denied Thompson's habeas petition and his subsequent request for certificate of probable cause. The probable cause certificate was granted by this court on November 11, 1989.
 
 II.
 
 9
 Thompson argues that the district court erred in determining that Bush was aware of the unsuccessful attempt to revoke Smith's immunity and contempt proceedings, and that Bush's failure to investigate further precluded relief. Thompson alleges that the district court's conclusions are erroneous for two reasons: 1) the record contradicts this conclusion and 2) failure to investigate in light of a partial disclosure does not exempt the State from its constitutional obligation to produce exculpatory evidence. Thompson states that Bush's knowledge of the revocation attempt is an insufficient disclosure because the key issue is the impeachment value of the revocation attempt when coupled with the subsequent contempt proceedings and the agreement struck between Smith and the State.
 
 
 10
 With regard to the instant case the Thompson I court found:
 
 
 11
 The State does not argue that Thompson's counsel failed to request transcripts of the immunity revocation and contempt proceedings, and the record indicates that a general request for these materials was made. J.App. at 37, 115-20. Moreover, since Smith was the State's key witness against Thompson and since the State failed to obtain a conviction without Smith's testimony, the allegedly undisclosed evidence constitutes material, exculpatory information under Brady and Agurs. Therefore, our resolution of Thompson's Brady challenge turns on whether defense counsel was aware, prior to the third trial, that these proceedings had taken place.
 
 
 12
 Id. at 6-7. Thompson claims that when this court remanded the case to the district court to consider the Brady challenge, the question of materiality of the transcripts of the proceedings was settled and the district court was limited to making a finding on whether the Thompson's counsel were aware of the various proceedings.
 
 
 13
 Under the Brady line of cases, in order to effect a denial of due process, two requirements must be met: first, that there was no knowledge of the evidence on the part of the defense, and second, that the evidence was material, such that disclosure of the evidence would have created a reasonable probability that the trial result would have been different. United States v. Bagley, 473 U.S. 667, 684, (1985). With regard to the first requirement, the district court found that both attorneys representing Thompson, Bush and Louck, knew of the State's attempt to revoke Smith's immunity. Louck admitted on the record of the June 29, 1981 hearing that he was aware of the revocation hearing. The Court found that Meter had told Bush both of the petition to revoke immunity, and that the petition had been denied. The Court also found that Thompson himself was present at the June 22 entrapment hearing, where Meter explained to the Court that Smith was a hostile witness and that he was trying to revoke Smith's immunity. The district court noted that Louck was served with re-notice of the revocation hearing, and stated:
 
 
 14
 In addition, this court does not read the Sixth Circuit's mandate as requiring that the prosecution send new formal notice of all potentially exculpatory evidence including impeachment evidence that was previously disclosed, to a defendant's substituted counsel.
 
 
 15
 J.App.Vol. I at 24. It is clear that counsel for Thompson knew of the revocation proceeding itself. Thus, there can be no Brady challenge based on the failure to disclose the State's attempt revoke Smith's immunity. The court also determined that at the time of the third trial, Bush did not know that Smith had testified at the revocation hearing, or that Smith had pled guilty to and was sentenced to 30 days for contempt of court.
 
 
 16
 With respect to the contempt proceedings, the district court chastised Bush because while he was aware of the attempts to revoke immunity and the fact that Smith was a hostile witness, he failed to investigate further. The Court stated:
 
 
 17
 It is inconceivable that a criminal defense attorney with considerable experience would not review the court file, or at least the docket entries, when substituted as counsel for a defendant's third trial on a first-degree murder charge. Nevertheless, Bush says he did not review the court file which clearly indicated to Bush that the proceeding in question had been held.
 
 
 18
 Id. The court concluded that "[f]ailure to disclose evidence may not constitute a violation of due process where the defense counsel was aware of the evidence, but did not investigate or review the evidence." Id. (citing) U.S. v. Iverson, 648 F.2d 737, 738-39 (D.C.Cir.1981) (per curiam).
 
 
 19
 The district court also determined that the potential impeachment evidence from Smith's testimony at the revocation hearing and the contempt of court proceedings was not material. The district court summarized the pertinent evidence taken at the revocation hearing as follows. First, on May 8, 1981, Detective Harris served Smith with a subpoena. At that time Smith told Harris "I don't remember anything" and "you will be better off if you don't put me on the stand, I want to see Thompson get off." Second, Smith claimed he could not remember anything until his memory was refreshed by his preliminary examination testimony. Third, Smith denied saying he would not testify, and denied being afraid to testify against Thompson. J.App. at 25-26. The district court concluded that under the Bagley test, there was not a reasonable probability that if this evidence had been disclosed, the result would have been different. In fact, Bush admitted to the district court on the record that he might well not have wanted to bring out at trial Smith's revocation testimony about wanting to get Thompson off. Moreover, Thompson's counsel did extensive cross-examination of Smith at trial and attempted to impeach his testimony on the grounds that he had been granted immunity when he had originally been charged with armed robbery like Thompson, and was a paid informant for the Sheriff's Department.
 
 
 20
 Additionally, the State claims that Bush failed to produce the case file for the prior proceedings against Thompson even after it had been subpoenaed, claiming it was lost or had been destroyed. Therefore, the court could not be certain that Bush did not have a transcript of Smith's testimony at the revocation hearing. However, the district court found that even if the transcript was not provided, there had been no attempt to suppress. The court stated:
 
 
 21
 Thompson claims that the failure of the prosecutor to correct that statement to include a third occasion at the hearing on the petition to revoke, was 'suppression' of the fact that there had been such testimony. However, the June 15 revocation hearing was officially a proceeding in People v. Smith (although cross-docketed), and did not consist of testimony about what occurred during the robbery. In chambers, Meter made available to Bush all of the transcripts that he had assembled in preparation for trial. But, Meter did not know if the June 15 transcript was among them.
 
 
 22
 J.App.Vol. I at 23-24. The district court also reasoned that Smith's contempt conviction and sentence could have no coercive effect, because the 30 day sentence was served consecutive to Smith's ongoing jail term and, in fact, was served well before the September trial.
 
 
 23
 In the case of a remand for further proceedings, the mandate constitutes the law of the case only on such issues of law as were actually considered and decided by the appellate court, or necessarily inferred by the disposition on appeal. In the course of the subsequent proceedings directed or permitted by the mandate, the district court otherwise will apply the law as it reads it, subject to correction on a second appeal.
 
 
 24
 NAACP, Detroit Branch v. Police Officers Ass'n, 676 F.Supp. 790, 791 (E.D.Mich.1988), judgment vacated on other grounds, 900 F.2d 903 (6th Cir.1990) quoting, 1B J. Moore, J. Lucas & T.C. Currier, Moore's Federal Practice Sec. 0.404(10) at 172-174). In the instant case the district court did not limit its review to factual findings, but determined that the undisclosed testimony was not material. This court's instructions to the district court on remand stated that the transcripts of the revocation and contempt proceedings were material because of their possible impeachment value. However, this did not preclude the district court from a determination of the materiality of Smith's actual testimony at the hearings because the testimony itself was not entered in the record prior to the remand, and thus its materiality was not actually considered by this court or necessarily inferred from disposition on appeal.
 
 
 25
 Given that the contempt proceeding was easily discoverable by counsel for Thompson if he had taken time to review the district court docket sheet, we agree with the district court's conclusion that there was not suppression of the contempt proceeding. Also, even if Smith had been impeached on the basis of the "coerced" nature of his testimony after the contempt conviction, there is no reasonable probability the jury would have been persuaded that serving 30 days concurrent with a jail term already in progress had any effect on Smith's testimony. Finally, we agree with the district court's assessment of the materiality of Smith's testimony at the revocation hearing itself. As counsel for Thompson admitted, that testimony would not have much impeachment value. Therefore, the district court properly determined that Thompson's Brady challenge fails and denied the writ of habeas corpus.
 
 III.
 
 26
 Accordingly, the judgment of the district court is AFFIRMED.