Joseph J. DeMARCO,
Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 90–5070.

United States Court of Appeals,
Eleventh Circuit.

April 17, 1991.

---

John M. Weinberg, Miami, Fla., for petitioner-appellant.

Dexter W. Lehtinen, U.S. Atty., Linda Collins–Hertz, and Alice Ann Burns, Asst. U.S. Attys., Miami, Fla., Karen L. Atkinson, Asst. U.S. Atty., West Palm Beach, Fla., for respondent-appellee.

Before TJOFLAT, Chief Judge, EDMONDSON, Circuit Judge, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

The issue in this appeal is whether the failure of the prosecutor to correct the perjured testimony of the government's essential witness, and her capitalizing on it in her closing argument, when defense counsel is also aware of the perjury and does not object to it, requires a new trial. The district court denied the defendant's motion under 28 U.S.C. § 2255. We disagree and vacate the judgment of conviction.

## I. *Background*

DeMarco was found guilty of transporting in interstate commerce securities and moneys valued in excess of $5,000.00, knowing the same to have been stolen, converted, and taken by fraud, in violation of 18 U.S.C. § 2314. He filed a motion to vacate the sentence imposed by the district court which the court considered as a motion under 28 U.S.C. § 2255 and, after a hearing, the court denied the motion.

The material facts are not in dispute. An essential government witness against DeMarco was Eli Vance. The theory of the defense was that the real culprit was Vance. Defense counsel told the jury in his opening statement that the evidence would reveal that Vance had made "other statements at other times" and that he "may be testifying because he has made a deal." The government concedes that it had made a deal with Vance who had previously been convicted. In its discovery letter furnished by the government to defense counsel more than two years prior to trial of this case, the letter stated in pertinent part:

> One of the government witnesses, Mr. Vance was convicted in the original case (83–8001 CR–J.C.P.). Mr. Vance has been told that whatever cooperation he renders the government will be known to the court at any time he may file a motion for reduction of sentence. Additionally, Mr. Vance has been told that he would not be prosecuted for any false statements made during the original trial.

After Vance testified for the government at the trial of another defendant, the government assisted him at his sentencing, resulting in a reduction of sentence. It further made his cooperation known to the Parole Commission which then advanced his presumptive parole date.

All of this, except for the advancement of his parole date, occurred prior to DeMarco's trial, at which Vance testified on cross-examination that he had never been promised anything, had not received anything, and did not expect to receive anything. The government knew that those were prevarications but did nothing to intervene. Neither did defense counsel object although he knew that Vance was giving false testimony, because counsel was in possession of the discovery letter. In her jury argument the prosecutor adopted and emphasized Vance's perjured testimony.

The district court found that since defendant's counsel knew of the perjury and did nothing about it, DeMarco's Section 2255 motion should be denied.

## II. *Discussion*

A. The Government's use of perjured testimony.

In *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104

**1076**

(1972), the Supreme Court said, "[a]s long ago as *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 341, 79 L.Ed. 791 (1935) this court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice'. This was reaffirmed in *Pyle v. Kansas,* 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942). In *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), we said '[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. *Id.* at 269, 79 S.Ct. at 1177.'" This rationale extends to impeachment evidence. *United States v. Cole,* 755 F.2d 748, 763 (11th Cir.1985). Thus, "[t]he thrust of *Giglio* and its progeny has been to ensure that the jury knows the facts that might motivate a witness in giving testimony ..." *Brown v. Wainright,* 785 F.2d 1457, 1465 (11th Cir. 1986).

**B. Defendant's knowledge of the perjured testimony.**

While the prosecutor concedes that she should have asked for a bench conference to note the existence of the Vance agreement, the government insists that its failure to correct the false evidence should be excused because defense counsel had been given the discovery letter informing him of the prosecutor's promises made to Vance and was therefore in a position to correct the false evidence by asking specific questions on cross-examination and by introducing the letter into evidence. To support its position it relies on *United States v. Iverson,* 648 F.2d 737 (D.C.Cir.1981); *accord Ross v. Heyne,* 638 F.2d 979 (7th Cir.1980), and *United States v. Meinster,* 619 F.2d 1041 (4th Cir.1980) holding that there is no violation of due process resulting from prosecutorial non-disclosure of false testimony if defense counsel is aware of it and fails to object. The government also submits that the principle of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) was not violated because there was no suppression by the government of evidence favorable to DeMarco since his counsel had knowledge of the perjury.

**C. The Government's jury argument.**

Distinguishing this case from those relied upon by the government is the added important factor that in the prosecutor's summation to the jury, she not only adopted Vance's perjured testimony, but capitalized on it.

In a strikingly similar case, *United States v. Sanfilippo,* 564 F.2d 176 (5th Cir.1977), the government advised defendant's counsel by letter weeks prior to trial that one Mori would be a government witness in return for which he would not be prosecuted in the *Ellswick* case; that the government would make his cooperation known to the judge at the time of Mori's sentencing; and that he would not be filed against as a second offender. On cross-examination defense counsel futilely attempted to elicit the terms of the prosecutor's promise not to prosecute Mori in the *Ellswick* case. The prosecutor knew that Mori's testimony regarding the terms of his plea agreement was false. The court said:

Here weeks before trial, the prosecutor satisfied his obligation under *Giglio* to fully disclose the terms of the plea agreement.

. . . . .

The government argues that defense counsel could have apprised the jury of the promise by requesting an evidentiary hearing on the admissibility of the letter received from the government, by subpoenaing Mori's attorney to testify to his understanding of the agreement struck between Mori and the government, or perhaps by calling upon the government to stipulate to certain facts. These tools being available to the defendants, the question is whether the government is relieved of responsibility.

. . . . .

Although it would appear that the prosecutor may have been obliged to step forward and set the record straight when Mori persisted in misrepresenting the government's promise despite repeated efforts by defense counsel to elicit the

truth, we need not ground reversal solely on the failure to perform that duty.

Coupled with the failure to correct Mori's false testimony at the time was the prosecutor's capitalizing on it in his closing argument.

. . . . .

Thus the government not only permitted false testimony of one of its witnesses to go to the jury, but argued it as a relevant matter for the jury to consider. Whether either instance alone would merit reversal, we need not decide, for together they do.[1]

*Id.* at 178–79.

### D. Materiality.

A conviction must be overturned which rests in part upon the knowing use of false testimony if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Vance was a star witness for the government. He testified in its case in chief and as a rebuttal witness. The prosecutor relied heavily on Vance's testimony in her summation to the jury. Without him the government did not have a case against DeMarco. The government had agreed not to charge Vance with perjury from his first trial and to make his cooperation known to the sentencing court for a reduced sentence. In closing argument the government stated that Vance had already gotten his release date, and had been before the parole board when there was nothing that could be done for him because he had "maxed" out, and that nothing else was done for him.

If Vance did not testify for the government, presumably he would have been prosecuted for perjury in his first trial, and would not have received a reduced sentence. If he did testify these adverse consequences would not come to pass. It is difficult to imagine a more compelling fact that the jury should have in order to properly evaluate whether a witness of doubt-

ful credibility was in fact being credible in his trial testimony.

### III. *Conclusion*

We conclude that the prosecutor's argument to the jury capitalizing on the perjured testimony reinforced the deception of the use of false testimony and thereby contributed to the deprivation of due process. The judgment of conviction of DeMarco is VACATED.

---

**1.** In *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) this court adopted as binding precedent all decisions of the Fifth Circuit handed down prior to October 1, 1981.