******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESPINOSA, J., concurring in part and concurring in the judgment. I agree with and join part II of the majority opinion, which concludes that the actions of the defendant, Victor L. Jordan, Sr., were insufficient to sustain his conviction of tampering with physical evidence. I write separately because, although I agree with the majority's ultimate conclusion in part I that there was no violation of the defendant's due process right to a fair trial, I disagree with its analysis. Specifically, I agree that, if we were to assume, without deciding, that there was impropriety on the part of the prosecutor, any error was harmless beyond a reasonable doubt. I believe, however, that we should reach the issue of whether the Appellate Court properly concluded that the prosecutor acted improperly.

In this concurring opinion, I first explain that the majority's determination not to address the prosecutor's duty under *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *Napue* v. *Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959), is based on an incorrect reading of the scope of the certified question. Second, and more importantly, I explain that the majority's failure to address the question of whether the prosecutor acted improperly leaves standing the Appellate Court's incorrect application of *Napue* to the facts of the present case. And the incorrect legal analysis of that court is a significant one, which should be rectified by this court. Specifically, this appeal presents a somewhat unusual, but not rare, sequence of events that implicates the doctrines set forth by the United States Supreme Court in *Brady* v. *Maryland*, supra, 87 (prosecutor's duty to disclose exculpatory evidence), *Napue* v. *Illinois*, supra, 269–70 (prosecutor's duty to correct false or misleading testimony), and *Giglio* v. *United States*, 405 U.S. 150, 154–55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) (extending *Brady* and *Napue* doctrines to understandings or agreements witness has with state in exchange for testimony). That is, when a prosecutor, at the outset, has disclosed both to the defendant and the court the nature of any agreements that have been offered to the state's witnesses in exchange for their testimony, does the prosecutor have a duty to correct, in the presence of the jury, any subsequent, misleading testimony offered by those witnesses?

I conclude that because the prosecutor fulfilled his duty pursuant to *Brady* when he informed both the court and the defendant of the nature of the agreements he made with the state's witnesses, Herman Cordero and Jennifer Campbell, in exchange for their testimony he did not have a subsequent duty pursuant to *Napue*, given the particular facts of the present case, to correct

the misleading testimony of those witnesses as to the agreements. Accordingly, I concur.

## I
### CERTIFIED QUESTION

The majority suggests that the reason it does not reach the issue of whether the Appellate Court properly concluded that the prosecutor acted improperly is because that issue is beyond the scope of the first certified question.[1] I disagree. The first certified question was limited to the following issue: "Did the Appellate Court properly conclude that the prosecutor's failure to correct the misleading testimony of . . . Cordero and . . . Campbell did not deprive the defendant of his due process right to a fair trial?" *State* v. *Jordan*, 305 Conn. 918, 47 A.3d 388 (2012). I first observe that even if the majority was correct that the issue is beyond the scope of the certified question, it does not *necessarily* follow that this court would be unable to consider this issue.[2] This court has discretion to address issues or claims not within the scope of the certified question if it is in the interest of judicial economy; *State* v. *Webster*, 308 Conn. 43, 60 n.13, 60 A.3d 259 (2013); or if the issue was briefed by the parties and addressed at oral argument. *Finan* v. *Finan*, 287 Conn. 491, 498, 949 A.2d 468 (2008).[3]

The issue of whether the Appellate Court properly concluded that the prosecutor acted improperly by violating his duty under *Brady* and *Napue*, however, falls within the scope of the certified question, which requires us to resolve whether the prosecutor's failure to correct the misleading testimony deprived the defendant of his due process right to a fair trial. That question encompasses the entire due process inquiry, including both impropriety and materiality. Specifically, because the defendant must prevail on both prongs in order to establish that the prosecutor's actions have violated his right to due process, the certified question necessarily includes both the issue of whether the prosecutor's actions violated *Brady* and *Napue* and, if the answer to that question is in the affirmative, whether the violation was material. Accordingly, the majority's reading of the certified question is unnecessarily narrow. Finally, I observe that, because the Appellate Court addressed in its opinion the issue of whether the prosecutor acted improperly and because both parties have briefed that issue and discussed it at oral argument, there is no risk that the parties will be prejudiced by this court reaching the issue. Therefore, the issue of whether the Appellate Court properly concluded that the prosecutor acted improperly is before this court.[4]

## II
### APPELLATE COURT'S INCORRECT CONCLUSION SHOULD NOT BE LEFT STANDING

I also write separately because the majority's failure

to address this issue leaves standing the incorrect conclusion of the Appellate Court that the prosecutor's actions were improper. This court has a duty both to parties and to lower courts to clarify the law and to correct any errors in interpretation made by the Appellate Court. In this concurring opinion, therefore, I explain that because the prosecutor properly disclosed the details of his agreements with Cordero and Campbell, as required under *Brady*, he did not have a duty, pursuant to *Napue*, under the facts of the present case, to correct the subsequent misleading testimony[5] given by these witnesses.

I begin by reviewing the Appellate Court's discussion of the defendant's claim that the prosecutor violated his due process right to a fair trial by not correcting the misleading testimony given by Cordero and Campbell in the presence of the jury. After addressing the threshold issue of whether the defendant had waived the claim,[6] and concluding that he had not done so because he had "attempted twice to draw out the presence of the plea agreement from Cordero," the court proceeded to the merits of the defendant's claim. *State* v. *Jordan*, 135 Conn. App. 635, 664, 42 A.3d 457 (2012). The court concluded that the prosecutor's initial disclosure of the nature of the agreements with Campbell and Cordero was inadequate in light of their subsequent misleading testimony; id., 666–67; because "the jurors could well have been left with the impression, created by Cordero's and Campbell's testimony, that neither had any incentive to testify favorably for the state. Under these circumstances . . . the prosecutor had a duty to correct the record before the jury." Id., 667. Having concluded that the prosecutor acted improperly, the Appellate Court then applied the six factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), to determine that the improper action did not deprive the defendant of his due process right to a fair trial.[7] The court based its conclusion on the fact that there was additional evidence beyond Cordero's and Campbell's testimony that pointed to the defendant as the assailant, that the prosecutor did not attempt to use the false testimony, that the jury was aware of the status of Campbell and Cordero as charged accomplices in the case, and, additionally, that "the court instructed the jury to carefully scrutinize their testimony on the basis of this status." *State* v. *Jordan*, supra, 667–68.

By holding that the prosecutor had a duty to disclose the nature of his agreements with Cordero and Campbell in the presence of the jury, notwithstanding the fact that he already had provided the defendant with the information regarding the true nature of those agreements, the Appellate Court went beyond the requirements of both *Brady* and *Napue*. *Brady* sets out the rule that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process [when] the evidence is material either to guilt

or to punishment, irrespective of the good faith or bad faith of the [prosecutor]." (Internal quotation marks omitted.) *Adams* v. *Commissioner of Correction*, 309 Conn. 359, 369, 71 A.3d 512 (2013). A subset of the *Brady* rule was established in *Napue*, which places an obligation on the prosecutor to correct false or misleading witness testimony. *Napue* v. *Illinois*, supra, 360 U.S. 269–70. The duty to correct under *Napue* includes the duty to correct a witness' false testimony about any understanding or agreement that the prosecutor and the witness have made in exchange for the witness' agreement to testify. *Giglio* v. *United States*, supra, 405 U.S. 154–55.

In order to understand why the prosecutor in the present case did not have a duty to correct the misleading testimony of Cordero and Campbell, it is helpful to view the facts of the present case in light of the overarching purpose behind *Brady* and *Napue*, which is to ensure the fair administration of justice and fair dealing by the prosecutor. The United States Supreme Court explained the limits of that purpose: "The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial . . . ." (Footnotes omitted.) *United States* v. *Bagley*, 473 U.S. 667, 675, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). The court further explained in *Bagley* that "[b]y requiring the prosecutor to assist the defense in making its case, the *Brady* rule represents a limited departure from a pure adversary model. The [c]ourt has recognized, however, that the prosecutor's role transcends that of an adversary: he is the representative not of an ordinary party to a controversy, but of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." (Internal quotation marks omitted.) Id., 675 n.6. Additionally, the United States Supreme Court has made clear that "[the prosecutor] may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger* v. *United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935).

In the present case, the prosecutor's actions were perfectly in accordance with the principles underlying *Brady* and *Napue*. Far from striking "foul" blows, the prosecutor did everything that due process required. Specifically, he had disclosed to the court and to the defendant the nature of his agreements with both Cord-

ero and Campbell before they testified. He did not attempt to hide the information or to act, in any way, unfairly or dishonestly in his dealing with the defendant. The prosecutor told the defendant and the court, on the record: "And, just [s]o the record is clear, what I said to [Cordero's attorney] and what I said to [defense counsel] about [Cordero's] cooperation is that if he testified we would bring his cooperation to the sentencing judge . . . when his case is disposed of. And that's the extent of the agreement." Prior to Campbell's testimony, the prosecutor again told the defendant and the court, on the record: "[Campbell is] represented by Attorney Auden Grogins and [I] made the same representation to her and her client as I did to . . . Cordero and his [attorney], that their cooperation, if any, would be brought to the attention of the sentencing judge at the time [her] case is disposed of." The prosecutor made both of these disclosures outside of the presence of the jury. This fulfilled his obligation under *Brady* to provide the defendant with exculpatory information. *Brady* v. *Maryland*, supra, 373 U.S. 87. It was then incumbent upon the defendant to determine whether to use that information. That is, once the witnesses gave misleading testimony during direct examination, the defendant had the option of using the *Brady* material that the prosecutor had provided to him to impeach the witnesses by questioning them about any consideration they were promised in exchange for testifying. As a practical matter, the prosecutor had no duty to correct the misleading testimony by informing the defendant of the true nature of his agreement with the witnesses— he already had provided the defendant with that information. The only remaining question was, once the witnesses gave misleading testimony, whose duty was it to correct that misleading testimony *in the presence of the jury*?

The mistake in the Appellate Court's reasoning was that it imposed a duty upon the prosecutor that properly belonged to defense counsel. That is, after a prosecutor has discharged his duty under *Brady* to provide a defendant with exculpatory information, the duty to place that information in front of the jury is a duty owed to the defendant by his counsel, not by the prosecutor. The mere fact that a witness has testified in a misleading manner, without more; see footnote 6 of this concurring opinion; does not shift responsibility back to the prosecutor. The prosecutor has an obligation to ensure that the defendant is aware of any false or misleading testimony at a time when the defendant can use the information, but the prosecutor need not represent the defendant's interest by correcting the testimony in front of the jury. That duty is one owed by defense counsel to the defendant, namely, the duty to make strategic choices about whether to impeach a witness about testimony that counsel knows to be false or misleading. Thus, the Appellate Court's imposition of a duty on the

prosecutor to correct misleading testimony in front of the jury is inconsistent with *Brady* and *Napue*, neither of which imposes upon the prosecutor any duties that are intended to replace the basic principles of our adversarial system.

While the facts of the present case may seem like a classic *Napue* scenario because there was misleading testimony that the prosecutor did not correct—and that is certainly what the defendant argues before this court—it is not. In the present case, the prosecutor told the defendant and the court the nature of his agreements with Cordero and Campbell prior to their testimony. This disclosure meant that the duty of the prosecutor to correct false or misleading testimony as set forth in *Napue* was never triggered. A prosecutor may be found to have violated *Napue* following initial disclosure only when the prosecutor's subsequent actions could mislead the jury. Examples of this include the prosecutor relying on or using the false or misleading testimony, the prosecutor interfering with the defendant's attempt to use the disclosed information, the prosecutor bolstering the credibility of the witness, or the prosecutor asking the witness questions intended to mislead the jury.[8] See footnote 6 of this concurring opinion. None of those circumstances existed in the present case. The Appellate Court, therefore, improperly concluded that the prosecutor acted improperly. Accordingly, I concur in the judgment.

[1] We granted the defendant's petition for certification to appeal, limited to two issues. See footnote 2 of the majority opinion.

[2] I concede that if we read the certified question narrowly, it could be interpreted to ask whether the Appellate Court properly applied the due process analysis in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), to determine whether the defendant has proved that the prosecutor's violation under *Napue* was material. Even under that narrow reading, however, it is within the court's discretion to rectify the Appellate Court's incorrect application of *Napue* to the question of whether the prosecutor committed an impropriety.

[3] This court's broad discretion to address issues within the scope of the certified question is illustrated by the fact that even if a claim is not considered by the Appellate Court or briefed before this court, this court may choose to address it, if the claim falls within the scope of the certified question. *McManus* v. *Commissioner of Environmental Protection*, 229 Conn. 654, 661 n.6, 642 A.2d 1199 (1994).

[4] I note that the state conceded at oral argument that it was raising the issue of waiver as an alternative ground for affirmance. I read that concession to imply that the state conceded also that it raises the impropriety issue as an alternative ground. This concession does not, however, preclude this court from reaching the issue of whether an impropriety occurred, nor does it release us from our obligation to do so. As I explain herein, we have a duty to set forth the correct application of *Brady* and *Napue* to the facts of the present case because otherwise the Appellate Court's incorrect application will govern.

[5] As the majority observes, the question of whether the testimony was false or misleading is not at issue in this appeal, as the state concedes that it was undisputed that the testimony was "potentially misleading."

[6] The federal courts have explored at length the circumstances under which a defendant will be deemed to have waived a claim that a prosecutor improperly failed to correct false or misleading testimony. The general rule is that "absent unusual circumstances, the right of the defendant to disclosure by the prosecutor is deemed waived if defense counsel with actual knowledge of the plea agreement or sentencing status information chooses not to present such information to the jury." (Footnote omitted.) *United States* v. *Iverson*, 648 F.2d 737, 739 (D.C. Cir. 1981). But see *Belmontes*

v. *Brown*, 414 F.3d 1094, 1115–16 (9th Cir. 2005), rev'd on other grounds sub nom. *Ayers* v. *Belmontes*, 549 U.S. 7, 127 S. Ct. 469, 166 L. Ed. 2d 334 (2006).

"When a criminal defendant, during his trial, has reason to believe that perjured testimony was employed by the prosecution, he must impeach the testimony at the trial, and cannot have it both ways. He cannot withhold the evidence, gambling on an acquittal without it, and then later, after the gamble fails, present such withheld evidence in a subsequent proceeding . . . ." (Internal quotation marks omitted.) *Evans* v. *United States*, 408 F.2d 369, 370 (7th Cir. 1969). The presumption is that the defendant chose not to challenge the false testimony for tactical reasons. *United States* v. *Mangual-Garcia*, 505 F.3d 1, 10–11 (1st Cir. 2007), cert. denied sub nom. *Villanueva-Rivera* v. *United States*, 553 U.S. 1019, 128 S. Ct. 2081, 170 L. Ed. 2d 819 (2008). Accordingly, the defendant will be deemed to have waived the right to argue on appeal that the prosecutor violated his right to due process by failing to correct the false or misleading testimony. Id.

There are several factual circumstances that could lead a court to conclude that a defendant did not waive the claim, despite the defendant's failure to use the information provided by the prosecutor regarding the nature of the agreements. For instance, "should defense counsel be precluded by circumstances essentially beyond his control (e.g., inaccessibility at the time of trial of the information or refusal of the trial court to permit inquiry into the matter) from raising or pursuing the issue, the *Giglio-Napue* rule strictly applies and due process mandates a new trial." *United States* v. *Iverson*, supra, 648 F.2d 739. These circumstances also include: the prosecutor relying on or using the false testimony; *DeMarco* v. *United States*, 928 F.2d 1074, 1076–77 (11th Cir. 1991); the prosecutor interfering with the defendant's attempts to impeach the witness by objecting to the questioning; *Jenkins* v. *Artuz*, 294 F.3d 284, 294 (2d Cir. 2002); the prosecutor bolstering the credibility of the witness, or asking questions of the witness that intentionally misleads the jury; id.; and defense counsel choosing not to raise the issue due to his own conflict of interest. *Ross* v. *Heyne*, 638 F.2d 979, 986 (7th Cir. 1980) (defense counsel knew testimony denying plea agreement was false because his law partner was witness' defense attorney and defense counsel, therefore, had conflict of interest). These circumstances are especially likely to preserve the due process violation claim when they are combined with the defendant's futile attempts to elicit the correct information. *United States* v. *LaPage*, 231 F.3d 488, 490, 492 (9th Cir. 2000), amended by 271 F.3d 909 (9th Cir. 2001); *United States* v. *Sanfilippo*, 564 F.2d 176, 177 (5th Cir. 1977).

Because none of the above circumstances existed in the present case, I conclude that the defendant waived the right to challenge the prosecutor's failure to correct the misleading testimony. I nonetheless reach the merits of the issue because, in light of the Appellate Court's incorrect analysis under *Brady* and *Napue*, it is necessary to explain the correct application of those decisions to the facts of the present case.

I emphasize, however, that the present case is a clear example of waiver. On cross-examination, the defendant asked Cordero only two vague questions about whether he expected to receive any benefit from the government for his testimony. When he responded that he did not, the defendant discontinued his questioning about this issue. The defendant did not ask Campbell any questions about whether she expected to receive any benefit from her testimony. The defendant had full knowledge of the agreements that the prosecutor had with both of these witnesses, but chose not to raise the issue of their misleading testimony at trial. Additionally, there were no subsequent actions by the prosecutor or extraneous factors that might save the claim. The prosecutor did not rely on or use the misleading testimony, the prosecutor did not attempt to interfere with the defendant's use of the information about the agreements with Cordero and Campbell, and there is no evidence that defense counsel had a conflict of interest that prevented him from raising the issue. The presumption, then, in the present case, is that the defendant chose not to raise the issue of Cordero's and Campbell's misleading testimony at trial for tactical reasons.

[7] I agree with the majority and the parties that the factors enumerated in *Williams* are not relevant to the analysis of the defendant's claim of prosecutorial impropriety. Accordingly, I also agree that "if there is a violation of the standard set forth in *Napue* v. *Illinois*, [supra, 360 U.S. 269–71], which requires that a prosecutor apprise the court when he or she knows a witness is giving substantially misleading testimony, then this court should apply the *Napue* standard in assessing whether there was harm." See footnote 4 of the majority opinion.

[8] Although the defendant does not appear to argue that the prosecutor relied on the misleading testimony during redirect examination, and the

defendant does not claim that the prosecutor directly relied on the misleading testimony, the defendant claims that the prosecutor's remarks during closing argument capitalized on that testimony. Specifically, the defendant claims that when a state's witness has offered misleading testimony, a general bolstering of the witness' credibility by the prosecutor may result in a due process violation. Even if I were to agree with the defendant's proposition, that would not help him in the present case.

As the Appellate Court noted in its opinion: "Although the state commented, generally, about the credibility of both witnesses during its closing argument, the state did not suggest, at any point that either witness should be believed on the ground that they had testified without the benefit of any agreement with the state regarding their own pending cases. And, the jury was made aware of both Cordero's and Campbell's status as charged accomplices through their direct testimony at the behest of the state. Additionally, the court instructed the jury to carefully scrutinize their testimony on the basis of this status." *State* v. *Jordan*, supra, 135 Conn. App. 667–68. Viewing the prosecutor's comments in closing argument as a whole reveals that to the extent that he claimed that the witnesses were credible, he did so on the basis that their testimony was consistent with other testimony and evidence presented at trial.

This is particularly highlighted by the fact that he argued that Campbell's testimony was credible, whereas he did not make the same claim about Cordero's testimony. For instance, although the prosecutor argued that Cordero's testimony placed the defendant at the scene of the crime, the prosecutor also somewhat discredited the testimony of Cordero by saying three times that it did not make much sense. By contrast, the prosecutor said that Campbell's credibility was bolstered because her descriptions of events were consistent with how other witnesses had testified. With respect to her descriptions of events, he summarized: "If you can rely on the details she gives about those things you can rely on the details she gives about everything." At the same time, even though he argued that Campbell was credible, he also encouraged the jury to look critically at her testimony. Accordingly, rather than generally bolstering the credibility of the witnesses, the prosecutor asked the jury to draw inferences based on the evidence presented at trial.