United States Court of Appeals,

Eleventh Circuit.

Nos. 96-8655, 97-8123.

CAMPAIGN FOR A PROSPEROUS GEORGIA, Petitioner,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

The Southern Company, Intervenor.

Aug. 11, 1998.

Petition for Review from Orders of the Securities And Exchange Commission.

Before CARNES and MARCUS, Circuit Judges, and MILLS[*], Senior District Judge.

CARNES, Circuit Judge:

Campaign for a Prosperous Georgia ("CPG") petitions this Court for review of orders of the Securities and Exchange Commission ("SEC") granting the Southern Company ("Southern"), a utility holding company, permission to issue or sell securities for the purpose of investing up to 100% of its retained earnings in other power producers. In its petition, CPG argues that the SEC: 1) misapplied its own rule by not requiring Southern to specify the particular investments it would make and demonstrate that each one would not have a "substantial adverse impact" upon Southern, its subsidiaries, or customers; 2) acted in an arbitrary and capricious fashion by failing to review each of Southern's investments individually; 3) lacked a substantial evidentiary basis for approving Southern's investments because it did not review them individually; and 4) lacked a substantial evidentiary basis for approving the investments because Southern did not show there would be no

   [*]Honorable Richard Mills, Senior U.S. District Judge for the Central District of Illinois, sitting by designation.

substantial adverse impact on Southern, it's utility companies, or its customers. We hold that, because it failed to raise the first three arguments in a timely fashion before the SEC, CPG is barred from pursuing them before this Court. We reject CPG's fourth argument, which was timely raised, as meritless.

## I. BACKGROUND

### A. STATUTORY FRAMEWORK

1. *The Original Version of the Public Utility Holding Company Act*

In 1935, following years of widespread fraud and mismanagement by the gas and electric utility holding companies, Congress enacted the Public Utility Holding Company Act ("PUHCA") to protect the interests of investors and ratepayers. *See* 15 U.S.C. § 79a. The PUHCA placed considerable restrictions on the ability of utility holding companies to make acquisitions and investments. Congress gave the SEC the authority and responsibility to enforce the PUHCA, including the authority to issue rules, regulations, and orders thereunder. *See* 15 U.S.C. §§ 79r, 79t. The Act makes the SEC responsible for insuring that all acquisitions by covered companies are consistent with the goals of the legislation. *See* 15 U.S.C. §§ 79i, 79j.

Under the PUHCA, SEC approval is necessary for a covered company to issue or sell its securities or to guarantee the obligations of any of its subsidiaries. *See* 15 U.S.C. §§ 79f, 79g, 79l(b); 17 C.F.R. § 259.101 (listing disclosure requirements for issuing securities). Under the Act, the SEC is required to withhold approval for the issuance of a security if, among other reasons, it finds that: (1) the security is not reasonably adapted to the security structure of the holding company and its subsidiaries; (2) the security is not reasonably adapted to the earning power of the holding company; or (3) the security to be issued is a guarantee of the security of another company and, under the circumstances, issuance would constitute an improper risk. *See* 15 U.S.C. 79g(d)(1), (2),

(5).

2. *The Energy Policy Act of 1992*

Over the last decade, the traditional monopoly structure of the power industry has begun to break down in favor of competition. To encourage that development, Congress passed the Energy Policy Act of 1992, Pub.L. 102-486, 106 Stat. 2776, which amended the PUHCA in ways that eased some of the restrictions on acquisitions and securities financings by covered companies. In the amended PUHCA, Congress eased the restrictions for financing related to investments in two types of entities: (1) Exempt Wholesale Generators ("EWGs"), which are companies exclusively in the business of generating electricity for sale at a wholesale price and which do not own or operate systems for transmitting electricity; and (2) Foreign Utility Companies ("FUCOs"), which are companies that generate and transmit electricity outside the United States and do not derive any income from the United States electricity market.

While the 1992 amendments expanded covered companies' ability to acquire EWG's and FUCO's, they left intact the requirement that those companies obtain SEC approval of any financings used to secure such acquisitions. *See* 15 U.S.C. § 79z-5a(h). However, Congress did relax the standards for SEC approval of such financings somewhat. With regard to financings for acquisition of a EWG, the SEC cannot make any of the adverse findings mentioned at 15 U.S.C. § 79g(d)(1), (2), or (5) (outlined above), unless the covered company's proposed action would have a "substantial adverse impact" on the utilities that the covered company operates. *See* 15 U.S.C. § 79z-5a(h)(3). The SEC has the authority to promulgate regulations that establish the criteria defining a "substantial adverse impact." *See* 15 U.S.C. § 79z-5a(h)(4).

To effectuate the 1992 amendments to PUHCA, the SEC promulgated Rule 53. That rule creates a two-tiered system of reviewing financings for EWGs and FUCOs in order to determine

whether they will have a "substantial adverse impact."[1] The first tier is a "safe-harbor" provision, which allows covered companies to invest the proceeds of financings in an amount up to 50% of their retained earnings in EWGs and FUCOs without securing any SEC approval (thus irrebuttably presuming that such investments will have no "substantial adverse impact").[2] Investments greater than 50% of retained earnings, however, fall into the second tier. All related financings of such investments must be submitted to the SEC in order for it to determine if those investments will not have a "substantial adverse impact." *See* 17 C.F.R. § 250.53.

## B. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Southern, a registered holding company, petitioned the SEC for approval of its proposal to invest financing proceeds up to 100% of its retained earnings in EWGs and FUCOs. Southern's application did not name the particular EWGs or FUCOs in which it would invest, but asserted that it would use a demanding, critical process to determine which ones to invest in. Southern's application also represented that such investments would not have a " "substantial adverse impact' on the financial integrity of the Southern System," or an " "adverse impact' on any utility subsidiary of Southern, or its customers, or on the ability of the four State commissions to protect such customers."

After receiving Southern's application, the SEC issued a public notice soliciting comments about it. CPG was the only party to respond to that notice. In its comment letter, filed on November 27, 1995, CPG raised three objections: (1) Southern's investments would result in an unavailability of capital that Southern might need to fund future operating costs, thereby resulting in higher rates;

---

[1]Rule 53 discusses only financings related to EWGs, but the SEC has consistently applied the rule to FUCO financings, as well, and the parties do not question that application.

[2]Hereafter, we will use the term "investments" or "investment" to refer to the concept of "investing the proceeds of financings."

(2) profits from these investments would allow Southern to subsidize rates for its domestic consumers, thereby inhibiting competition in the electricity market; and (3) approval of the application would reward Southern even though it has a poor pollution record. By an order dated April 1, 1996, the SEC rejected CPG's arguments and approved Southern's application. CPG filed in this Court a timely petition for review of that order. In May 1996, CPG filed a motion for rehearing before the SEC. That motion raised the same contentions as CPGs original comment letter, and the SEC denied CPG's motion.

On October 24, 1996, after Southern had announced its intention to acquire a majority interest in Consolidated Electric Power of Asia, a FUCO, CPG filed a "supplemental motion for rehearing" with the SEC, citing that proposed acquisition as indicating the need for a hearing and reconsideration of the SEC's order. In its supplemental motion, CPG raised three new arguments: 1) that the SEC had misapplied its own Rule 53 in allowing Southern to invest up to 100% of its retained earnings without receiving approval prior to each investment; 2) that the factual findings of the SEC were not supported by substantial evidence because it did not review the proposed investments individually; and 3) that the SEC had acted in an arbitrary and capricious manner because it did not give a reasoned analysis for its decision not to review each of Southern's investments individually.

On January 15, 1997, the SEC denied CPG's "supplemental motion," finding that "CPG has not demonstrated any reason for the [SEC] to take the extraordinary step of reopening this matter." CPG then filed in this Court a timely petition for review of the SEC's denial of its supplemental motion.

## II. STANDARD OF REVIEW

Whether a party is barred from bringing an argument by failing to present it before the SEC

is an issue that we have plenary authority to decide in the first instance. The factual findings of the SEC in an adjudication under PUHCA are accepted unless the are not supported by substantial evidence. *See* 15 U.S.C. § 79x(a); *Environmental Action, Inc. v. SEC,* 895 F.2d 1255, 1259 (9th Cir.1990).

## III. DISCUSSION

### A. WHETHER CPG PROPERLY RAISED ITS OBJECTIONS BEFORE THE SEC

The arguments CPG makes to this Court are that the SEC: 1) misapplied its own Rule 53 by failing to consider each of Southern's proposed investments on an individual basis; 2) acted in an arbitrary and capricious manner by failing to examine individually Southern's proposed EWG and FUCO investments; 3) lacked a substantial evidentiary basis for approving Southern's application because it did not consider each investment individually; and 4) lacked a substantial evidentiary basis for finding that Southern's investments would not have a "substantial adverse impact" on the utilities Southern operates because those investments would result in an unavailability of capital for Southern's operations. CPG's first three arguments are different facets of the same contention, which is that the SEC should have considered each of Southern's EWG and FUCO investments on an individual basis instead of determining in advance that Southern could invest in any EWGs and FUCOs it chose. Accordingly, we will refer to those three arguments and the issue they address collectively as the "individual review" argument or issue.

CPG did not raise the individual review issue in either its initial filing or its initial petition for rehearing with the commission. The first time it raised the issue with the SEC was in its supplemental motion for rehearing, which was filed six months after the SEC order and nearly a year after comments had been solicited on Southern's application. As a result, the SEC contends that this Court lacks jurisdiction to decide the issue. CPG responds that it has satisfied the literal

requirements of the judicial review provision contained in PUHCA § 24, and therefore this Court has jurisdiction to decide the individual review issue. CPG's position is that § 24 requires nothing more than that the ground of objection or issue in question be raised before the SEC at some point, at any point, in the administrative process. Because it did make its individual review arguments or objections known to the SEC in a supplemental motion for rehearing, that is enough, CPG contends.

Section 24 of the PUHCA, 15 U.S.C. § 79(x)(a), provides that "[n]o objection to the order of the Commission shall be considered by [a Court of Appeals] unless such objection shall have been urged *before* the Commission or unless there were reasonable grounds for failure so to do." (emphasis added) Section 24 is ambiguous, because it is not apparent from the language of that provision when an objection must have been made in order to have been "urged *before* the Commission." That phrase might mean only those objections to the application that were urged prior to the SEC issuing an order deciding the matter. Or it might include all objections urged prior to the SEC's denial of an initial rehearing petition. Or, at the extreme, the statutory phrase might include objections urged at any time whatever, no matter how late in the process, or even after the process has been completed. In order to decide this case, we need only decide this specific issue: Does "urged before the Commission" as used in § 24 of PUHCA, include an objection not raised until a supplemental motion for rehearing that was filed six months after the SEC had issued an order on the application? For the following reasons, we hold that the answer to that question is "no."

An ambiguous statutory phrase should be construed in the context in which it is used, with the congressional intent in mind. *See, e.g., Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 848, 136 L.Ed.2d 808 (1997). The manifest congressional intent behind the provision in question is to give the SEC a meaningful opportunity to rule on, make factfindings about, and apply its expertise to, any objections parties may have to a proposed administrative action. *See McKart v.*

*United States,* 395 U.S. 185, 192-95, 89 S.Ct. 1657, 1662-63, 23 L.Ed.2d 194 (1969)(discussing the importance of administrative agency review in light of agency expertise and authority); *See McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 1087, 117 L.Ed.2d 291 (1992) (discussing the importance of a record being developed before an administrative agency).

Given the realities of the administrative process, in order for the SEC's opportunity to consider objections to be meaningful, the objections must be made while the SEC has the application under consideration. Absent some reasonable ground for the delay—and here there is none—a supplemental motion for rehearing, filed six months after the SEC has decided the matter and issued its order, and nearly a year after it had solicited comments, is too late to provide a meaningful opportunity for administrative review.[3] In this case, for example, the SEC had approved Southern's application and moved on to other matters, and Southern was acting on the SEC's approval by the time CPG raised the objections it now advances before this Court.

In the realm of regulatory proceedings, finality is important to agencies, to parties, and to the public. As the Supreme Court stated more than a half-century ago:

> If upon coming down of the [administrative] order litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening.

*ICC v. Jersey City,* 322 U.S. 503, 514-15, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420 (1944); *see also Civil Aeronautics Bd. v. Delta Air Lines,* 367 U.S. 316, 321-22, & 330-31, 81 S.Ct. 1611, 1617 & 1621-22, 6 L.Ed.2d 869 (1961)(discussing the interest of finality in administrative proceedings). The

---

[3]CPG could have raised its individual review objection and arguments before the SEC ruled on Southern's application, even though Southern did not select any particular EWG or FUCO investment until later. The thrust of the objection is that Rule 53 requires consideration of such investments on a case by case basis; therefore, if valid, the objection would have required denial of the application as filed by Southern, because it did not specify the companies in which the investments would be made.

same reasoning applies to interpreting "urged before the Commission" as that language is used in § 24 of PUHCA. If all a party has to do in order to obtain judicial review of an objection to a SEC order is file a supplemental motion for rehearing with the Commission, the administrative process might never be completed, or a party could readily bypass any meaningful consideration by the Commission of its objections. For example, a party could file a supplemental motion for rehearing in the SEC the day prior to filing a petition for judicial review, and its belated objections would have been "urged before the Commission"—if we adopt CPG's interpretation of the statutory language. We decline to adopt that interpretation, because it would lead to lack of finality in the administrative process and to judicial review of objections that the SEC never had a meaningful opportunity to consider. Those are the very things we believe Congress meant to avoid when it adopted § 24 of PUHCA.

We realize that the SEC sometimes entertains new objections on rehearing, and that one court of appeals, the D.C. Circuit, has agreed to hear objections that would otherwise have been barred where the SEC has actually considered and decided the merits of those objections. *See City of Lafayette v. SEC,* 454 F.2d 941, 947 (D.C.Cir.1971), *aff'd sub nom, Gulf States Utilities v. FPC,* 411 U.S. 747, 93 S.Ct. 1870, 36 L.Ed.2d 635 (1973). We have no quarrel with such a holding, which is analogous to a well established doctrine involving federal habeas corpus review of procedurally barred issues where the state courts have not enforced the bar themselves. *See, e.g., Wainwright v. Witt,* 469 U.S. 412, 431 n. 11, 105 S.Ct. 844, 855-56 n. 11, 83 L.Ed.2d 841 (1985); *Davis v. Singletary,* 119 F.3d 1471, 1479 (11th Cir.1997). Where the SEC has considered and ruled on the merits of an objection, the reviewing court will have the benefit of the Commission's expertise, factfindings, and decision. Judicial review in such circumstances will not jeopardize finality or lead to inordinate delay.

Seeking to rely on *City of Lafayette,* CPG suggests that the SEC actually discussed and decided the merits of its individual review objection and argument, therefore, this Court should as well. We disagree with CPG's procedural premise. The SEC's order denying CPG's "supplemental motion for rehearing" specifically stated that "CPG has not demonstrated any reason for the [SEC] to take the extraordinary step of reopening this matter." The SEC declined to rule on the merits of CPG's untimely objection and argument about individual review. It follows that the *City of Lafayette* exception is inapplicable.

## B. THE OBJECTION PROPERLY BEFORE US

CPG did raise before the SEC during the comment period three objections to Southern's application. Those timely raised objections, for which CPG is entitled to seek judicial review, are that: 1) Southern investing an amount up to 100% of its retained earnings in EWGs and FUCOs would result in an unavailability of capital that it might need to fund future operating costs, thereby resulting in higher rates for consumers; 2) profits from such investments would allow Southern to subsidize rates for its domestic consumers, thereby inhibiting competition in the electricity market; and 3) approval of the application would reward Southern even though it has a poor pollution record. CPG did not raise the second and third of those objections in its brief to this Court, so we consider them to be abandoned. *See, e.g., Marek v. Singletary,* 62 F.3d 1295, 1298 n. 2 (11th Cir.1995) ("Issues not clearly raised in the briefs are considered abandoned.").

The only objection CPG presented to the SEC in a timely fashion and presses before us, is that Southern's investment in FUCOs and EWGs would result in an unavailability of capital for Southern's operations. That amounts to an attack on the substantiality of the evidence before the SEC, which found to the contrary. We reject that attack, because it is clear from the record that the SEC had a substantial evidentiary basis for finding the proposed investments would not result in

capital being unavailable for other operations.  The SEC considered financial data from several sources, sought comment from the state regulatory agencies, and used its own expertise in judging Southern's application.  Taking all of that evidence into consideration, the SEC had substantial evidence to conclude that Southern's investment of financing proceeds in an amount up to 100% of its retained earnings in FUCO's and EWG's would not have a "substantial adverse impact" on local operations.

## IV. CONCLUSION

For the reasons stated above, the petition for review is DENIED.