[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 2, 2005
THOMAS K. KAHN
CLERK

No. 03-15251

D.C. Docket No. 99-01317-CV-CAM-1

HERBERT CONNELL STEPHENS,

Petitioner-Appellant,

versus

HILTON HALL, Warden,
Georgia State Prison,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Georgia

**(May 2, 2005)**

Before TJOFLAT, DUBINA and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

The issue presented in this habeas appeal is whether the Georgia Supreme

Court unreasonably applied clearly established federal law when it affirmed, on direct appeal, the murder convictions of Herbert Connell Stephens on two grounds: first, that the suppression of arrest warrants for other suspects who were known to the defense did not deprive Stephens of due process of law under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963); and second, that the false testimony of a detective, who was cross-examined regarding his alleged falsehoods, did not deprive Stephens of a fair trial. Although we do not condone either the suppression of the arrest warrants or the misleading testimony of the detective, the decision of the Georgia Supreme Court was not objectively unreasonable, and we, therefore, affirm the denial of the petition for a writ of habeas corpus.

## I. BACKGROUND

On June 3, 1990, three young men, John Davis, Toria Pope, and Tony Daniel, were murdered at the Red Oaks housing project in Atlanta, Georgia. On October 26, 1990, a grand jury in Fulton County, Georgia, indicted Stephens and four others for malice and felony murder of John Davis, malice and felony murder of Toria Pope, malice and felony murder of Tony Daniel, and conspiracy to commit murder. On December 4, 1990, a jury found Stephens guilty of all counts except malice murder of Toria Pope and conspiracy to commit murder. Stephens

2

received three life sentences to run consecutively.

This appeal involves a collateral attack of Stephens's convictions based primarily on arguments that were made in Stephens's direct appeal. Stephens alleges a denial of due process based on suppressed evidence and perjured testimony. We review first pertinent aspects of his trial and direct appeal and then his state habeas review and the proceedings in the district court.

*A. Trial*

Three problems with late disclosures to the defense arose in the trial court. The first problem, which involved disclosure of volumes of exculpatory evidence, arose before the trial and eventually contributed to the need for a recess. The second problem, which involved a third statement of a witness regarding another suspect for the shooting of Davis, arose after the recess. These problems were remedied by the trial court followed by the presentation of substantial evidence of Stephens's guilt. The third problem arose after trial when the defense discovered arrest warrants for two other suspects, including a suspect for the shooting of Davis. These disclosure problems became the main issues presented in Stephens's direct appeal.

1. The Pretrial Disclosure of Exculpatory Material

On November 17, 1990, after an <u>in camera</u> review of what had been

represented as the entire case file of the State, the trial court ordered the prosecution to release more than 400 pages of exculpatory material to Stephens. On the morning of November 19, 1990, the day trial was to begin, Stephens's four co-defendants pleaded guilty to conspiracy to commit murder. That same morning, Stephens requested a continuance on the grounds that he had not had enough time to review the recently-produced documents and the guilty pleas unexpectedly cost him any assistance he might have received from the attorneys for the other defendants. The trial court denied the motion for a continuance, but after Stephens's attorney then declined to give an opening statement or examine the first witness of the State on the ground that he was not prepared to do so, the trial judge granted a one-week recess.

2. The Disclosure of Jackson's Third Statement During Trial

When the trial resumed on November 26, 1990, the prosecutor, Nancy Grace, disclosed an additional statement of one of the witnesses. The statement was given by Torrance Jackson on September 11, 1990, more than two months before trial, and it was different from two previous statements of Jackson that had been disclosed to the defense. Jackson, an eyewitness at the scene of the murders, identified an unindicted person, John Ragin, as a participant in the murder. When Jackson identified Ragin, he stated, "This is the man that I saw shoot John. There

4

is no doubt in my mind that this is the man that shot John Davis."

At trial, numerous eyewitnesses testified that they saw Stephens rob and shoot the victims, and several other witnesses who did not see the shootings testified that they saw Stephens on the scene shortly before the murders. Three witnesses testified that they saw Stephens shoot John Davis. One of these witnesses stated that Stephens was the only shooter. Four witnesses testified that they saw Stephens grab Tony Daniel down from a fence, put his foot on Daniel's chest, and shoot him. Two witnesses testified that Stephens was at the crime scene in a blue Cadillac. One witness testified that he heard shots and saw Stephens in a Cadillac leaving from the crime scene. A co-defendant, who later recanted at the hearing on the motion for a new trial, testified consistently with the other witnesses. The co-defendant testified that he acted as a lookout while Stephens and others robbed and murdered the victims, and Stephens paid him $130 for his participation in the crime.

Detective Curtis Johnson, the lead investigator, testified that the police had several suspects. Johnson stated that, after Stephens and his four co-defendants were in jail, Johnson continued looking for two unidentified persons. Johnson testified, however, that neither of these two unidentified persons were "ever named as being the shooter." They were only described as being on the scene in the Red

Oaks area the night of the murders. Johnson later admitted on cross-examination that, in the recently disclosed statement of September 11, 1990, Torrance Jackson identified John Ragin as the man who shot John Davis.

### 3. The Post-Trial Discovery of the Arrest Warrants

On December 28, 1990, after his convictions, Stephens moved for a new trial. In an amended motion filed on October 20, 1993, Stephens alleged that the State had suppressed the existence of arrest warrants for other suspects, including a warrant for John Ragin on the charge of murder of John Davis. The court held a hearing on the motion on November 3 and 4, 1993, and denied the motion on January 25, 1994. On February 21, 1994, Stephens filed a notice of appeal to the Georgia Supreme Court.

### B. Direct Appeal

On direct appeal, Stephens raised two issues that are pertinent to this habeas appeal. First, Stephens argued that he was denied a fair trial, in violation of the Fourteenth Amendment, because the State suppressed, until after his trial, the existence of arrest warrants for John Ragin and Travis Williams. Second, Stephens argued that the State deprived him of a fair trial by using false testimony regarding the existence of other named suspects. The Georgia Supreme Court affirmed the convictions. See Stephens v. State, 450 S.E.2d 192 (Ga. 1994).

The court rejected Stephens's argument that the concealment of the arrest warrants violated his right to a fair trial under Brady. Id. at 193. The court explained that the arrest warrant for Ragin was "not so material to [Stephens's] defense that [its] nondisclosure would amount to a constitutional violation of his right to a fair trial." Id. The court reasoned that Stephens had been "informed of Jackson's statement" that identified Ragin as a suspect, and Stephens "used Jackson's statement extensively to cross-examine the detective to whom it had been given, in an effort to impeach the detective's allegedly contradictory earlier testimony." Id.

The Georgia Supreme Court also rejected Stephens's argument that the State had denied him a fair trial by using false testimony. Id. at 193-194. Stephens unsuccessfully argued that the existence of the arrest warrants showed that "the officers' testimony at trial with regard to the possibility of there being additional suspects had been shown to be untrue." Id. The court rejected that argument, like the Brady argument, because "the evidence underlying the arrest warrants was admitted at trial and was used by [Stephens] on cross-examination." Id. at 194.

## C. State Habeas Petition

On April 11, 1997, Stephens filed a habeas petition in the Superior Court of Tattnall County, Georgia. The state court held an evidentiary hearing where five

witnesses testified, including Grace, and Detectives Hogan and Johnson, and the trial record and direct appeal record was introduced. The state habeas court denied Stephens's petition on January 28, 1999. The state habeas court concluded that neither the <u>Brady</u> claim regarding the arrest warrants nor the due process claim regarding false testimony could be relitigated in state habeas review. On May 14, 1999, the Georgia Supreme Court denied Stephens's application for a certificate of probable cause to appeal.

### D. Federal Habeas Petition

On May 24, 1999, Stephens filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Georgia under 28 U.S.C. section 2254. The petition was assigned to a magistrate judge who granted Stephens's motion for appointed counsel and his motion for leave to conduct discovery. On April 2, 2003, the magistrate judge entered his report and recommendation that Stephens's petition be denied.

The district court adopted the majority of the report and recommendation of the magistrate judge and denied Stephens's petition. Stephens filed a timely notice of appeal and application for certificate of appealability. The district court granted the certificate of appealability on the following three issues: (1) whether the prosecution withheld material and favorable evidence from the defense; (2) whether

8

the prosecution knowingly used false testimony at trial; and (3) whether Stephens was denied effective assistance of counsel at trial.

## II. STANDARD OF REVIEW

Because we are reviewing a final state habeas judgment, "our review is greatly circumscribed and is highly deferential to the state courts" under section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002). "When reviewing the district court's denial of a habeas petition, we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error." Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000). A federal court may not grant habeas relief unless the decision of the state court either was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence." Id. § 2254(e).

Our review of legal conclusions by the state courts is also especially deferential. A state court decision is contrary to the clearly established precedent of the Supreme Court "(1) if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent." Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362, 406, 120 S. Ct. 1495, 1519-20 (2000)). An unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putnam v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

Under the unreasonable application clause of section 2254(d), a federal habeas court may not issue the writ on the ground that, in its independent judgment, the state court applied federal law incorrectly. See Bell v. Cone, 535 U.S. 685, 698-99, 122 S. Ct. 1843, 1852 (2002). This clause imposes a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court

10

decisions be given the benefit of the doubt." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (quoting <u>Lindh v. Murphy</u>, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 2066 n.7 (1997)).  The habeas applicant must show that the state court applied federal law to the facts of his case in an objectively unreasonable manner.  <u>See</u> <u>id.</u> at 25, 123 S. Ct. at 360.  An "unreasonable application of federal law is different from an incorrect application of federal law."  <u>Williams</u>, 529 U.S. at 410, 120 S. Ct. at 1522.  Even clear error, standing alone, is not a ground for awarding habeas relief.  <u>See</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S. Ct. 1166, 1175 (2003).

### III.  DISCUSSION

Although the district court certified a question of ineffective assistance of counsel on appeal, Stephens waived that issue because he failed to make an ineffective assistance argument to this Court.  <u>See</u> <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1044 (11th Cir. 2000); <u>Campaign for a Prosperous Ga. v. SEC</u>, 149 F.3d 1282, 1287 (11th Cir. 1998).  Two issues remain.  The first is whether the State withheld material evidence in violation of the Fourteenth Amendment.  The second is whether the State intentionally used false testimony in violation of the Fourteenth Amendment.

The Georgia Supreme Court determined on each issue that Stephens had not

11

been denied a fair trial.  We must determine whether those conclusions were objectively unreasonable.  We address each argument in turn.

*A.  Suppressed Evidence*

Stephens argues that Grace withheld material exculpatory evidence in violation of his due process rights under the Fourteenth Amendment.  Stephens contends that the prosecution suppressed the arrest warrants for Williams and Ragin, which were sworn by Detective Johnson on September 26, 1990, two months before the trial.  The record is undisputed that the warrants were suppressed, but the issue before this Court is whether the state courts unreasonably found that their suppression did not prejudice Stephens and violate clearly established Supreme Court precedent.

1.  Clearly Established Federal Law

In Brady v. Maryland, the Supreme Court placed an affirmative duty on the prosecution to reveal any "evidence [that] is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87, 83 S. Ct. at 1196-97.  This duty covers "[i]mpeachment evidence . . . as well as exculpatory evidence."  United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985).  The Brady rule applies to evidence possessed by the prosecution team, which includes both the investigators and prosecutors.  See

12

United States v. Meros, 866 F.2d 1304, 1309 (11th Cir. 1989).

Three elements establish a Brady violation: (1) the evidence must be favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice. See Kelley v. Sec'y for Dep't of Corrs., 377 F.3d 1317, 1354 (11th Cir. 2004) (citing Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999)). Brady does not require that the prosecution "deliver [its] entire file to defense counsel, but only [that it] disclose" material evidence. Bagley, 473 U.S. at 675, 105 S. Ct. at 3380 (footnote omitted).

Evidence is prejudicially material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682, 105 S. Ct. at 3383. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995). To meet this standard, "the defendant does not need to demonstrate that, after discounting the

13

inculpatory evidence in light of the evidence in question, there would not have been enough evidence to convict him." Taylor v. Singletary, 122 F.3d 1390, 1395 (11th Cir. 1997) (citation and quotation omitted). Instead, the defendant must show that the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id.

### 2. State Court Determinations

On direct appeal the Georgia Supreme Court rejected Stephens's argument that the prosecution violated Brady by suppressing the arrest warrants for Ragin and Williams. The Georgia Supreme Court stated that "there is no proof that the State deliberately concealed the existence of those warrants from" Stephens. Stephens, 450 S.E.2d at 193. The court also concluded that the warrants were not material under Brady because Stephens was aware of Torrance Jackson's statement that identified the other two suspects and used this statement to cross-examine Detective Johnson at trial. See id.

When Stephens presented his Brady claim to the state habeas court, he again lost. That court held that, because the Georgia Supreme Court rejected this claim in Stephens's direct appeal, he could not relitigate the claim in habeas corpus. Stephens v. Sikes, No. 97HC-20, at *21 (Ga. Sup. Ct. Jan. 28, 1999) (unpublished). The state habeas court also considered whether Stephens presented any new

14

evidence in his state habeas proceeding that would change the determination made in his direct appeal, but the state habeas court determined that the evidence was "merely underlying support for the arrest warrants challenged on direct appeal" and "cumulative evidence already considered in . . . direct appeal." Id. at *23. The court also found that Detective Johnson's testimony, that Grace was aware of the warrants before trial and that copies of the warrants were in the file Johnson gave Grace, was presented at the motion for a new trial and was, therefore, before the Georgia Supreme Court on direct review. The state habeas court held that Stephens "presented no new evidence recovered since the time of his direct appeal in conflict with the Supreme Court's finding that, 'there is no proof that the State deliberately concealed the existence of those warrants.'" Id. at *24 (quoting Stephens, 450 S.E.2d at 193.) The state habeas court also concluded that, even if the documents underlying the warrants should have been disclosed, they "are not so material as to establish a Brady violation." Id.

### 3. Application of Clearly Established Federal Law

Although the Georgia Supreme Court and the state habeas court decided that there was no evidence that the prosecution deliberately withheld the arrest warrants, this determination did not conform to Brady. The suppression of material exculpatory evidence occurs "irrespective of the good faith or bad faith of the

15

prosecution." Brady, 373 U.S. at 87, 83 S. Ct. at 1196. The key decision of the state courts under Brady is that Stephens was not provided with the arrest warrants for Ragin and Williams until after the trial.

Although it is unclear whether the suppression was in good faith or bad faith, Grace, as the prosecutor, failed in her "duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." Kyles, 514 U.S. at 437, 115 S. Ct. at 1567. Stephens presented evidence that Grace knew about the warrants. Detective Johnson testified, both at the hearing on the motion for a new trial and at the evidentiary hearing in the state habeas court, that he discussed the arrest warrants for Ragin and Williams with Grace before Stephens's trial began. Johnson also testified that he provided Grace with a copy of his entire file, which included copies of the arrest warrants. Grace never informed the trial judge or Stephens that Johnson obtained arrest warrants for Ragin and Williams based on Jackson's statement. Instead, Grace assured the trial court that no charges against anyone else were pending. At the evidentiary hearing before the state habeas court, Grace denied that the detectives provided her the arrest warrants. Regardless of whether the detectives supplied her with the warrants, it was Grace's duty to learn about the warrants and disclose them. See id.

The failure of the State to disclose the warrants constituted suppression of

16

evidence, but the next issue is whether the suppressed evidence was material. See

Brady, 373 U.S. at 87, 83 S. Ct. at 1196. Evidence is material "if there is a

reasonable probability that, had the evidence been disclosed to the defense, the

result of the proceeding would have been different. A 'reasonable probability' is a

probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S.

at 682, 105 S. Ct. at 3383. We must consider the cumulative effect of the

suppressed evidence in combination with the inculpatory evidence presented at trial.

Id. at 683, 105 S. Ct. at 3384.

The decision of the Georgia Supreme Court that the arrest warrants were not

so material as to violate Brady was not an unreasonable application of clearly

established federal law. It is undisputed that Stephens possessed Jackson's

statement that Ragin was the man who shot John Davis. This statement was

admitted into evidence, and Stephens's counsel used Jackson's statement during his

direct examination and cross-examination of Detective Johnson to impeach

Johnson's testimony. We recognize that disclosure of the arrest warrants would

have allowed Stephens's counsel to challenge further Detective Johnson's testimony

that no other suspect had been identified as the shooter, but it is understandable that

the state courts decided that those disclosures would not have made a different

result reasonably probable. See Bagley, 473 U.S. at 682, 105 S. Ct. at 3383.

17

Evidence of the arrest warrants also would not have contradicted the testimony of numerous witnesses who testified that Stephens participated in the murders. Three witnesses testified that they saw Stephens shoot John Davis. One of these witnesses stated that Stephens was the only shooter. Four witnesses testified that they saw Stephens grab Tony Daniel down from a fence, put his foot on Daniel's chest, and shoot him. Two witnesses testified that Stephens was at the crime scene in a blue Cadillac. One witness testified that he heard shots and saw Stephens in a Cadillac leaving from the crime scene. In the light of this evidence, we cannot conclude that the decision of the Georgia Supreme Court was an unreasonable application of Brady.

The state habeas court also reasonably decided that the evidence underlying the warrants was not material under Brady because the Georgia Supreme Court concluded that the arrest warrants themselves were not material under Brady. Because Stephens does not challenge the determination of the state habeas court that this evidence merely provided "underlying support for the arrest warrants," the determination by the state habeas court was not an unreasonable application of clearly established federal law. The district court properly denied the petition for federal habeas corpus relief.

*B. False Testimony*

18

Stephens next argues that Grace knowingly elicited false testimony from Detective Johnson that all other suspects had been eliminated, and Stephens contends that Grace's knowing use of the testimony and her failure to disclose its falsity violated his due process rights under the Fourteenth Amendment. Although some of the testimony of Detective Johnson may have been false, the issue again is the materiality of this evidence. On that point, Stephens's argument fails.

### 1. Clearly Established Federal Law

To prevail on this claim, Stephens must show "that the testimony was false, that the state knew the testimony was false, and that the false testimony was material." Routly v. Singletary, 33 F.3d 1279, 1286 (11th Cir. 1994) (citing De Marco v. United States, 928 F.2d 1074, 1076 (11th Cir. 1991)). "[T]he falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" United States v. Alzate, 47 F.3d 1103, 1110 (11th Cir. 1995) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)). This reasonable likelihood standard imposes a "considerably less onerous" burden on Stephens than the Brady standard. Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993). "There is no violation of due process resulting from prosecutorial non-disclosure of false testimony if defense counsel is aware of it and fails to object." Routly, 33 F.3d at 1286 (citing United States v. Iverson, 648 F.2d

19

737 (D.C. Cir. 1981); <u>Ross v. Heyne</u>, 638 F.2d 979 (7th Cir. 1980); <u>United States v. Meinster</u>, 619 F.2d 1041 (4th Cir. 1980)).

## 2. State Court Determinations

Both the Georgia Supreme Court on direct appeal and the state habeas court rejected Stephens's argument "that the State deprived him of a fair trial through the knowing use of perjured testimony." <u>Stephens</u>, 450 S.E.2d at 193. The Georgia Supreme Court concluded that Stephens did not prove that Johnson's testimony was false because, when viewed in context, Johnson's testimony was not inconsistent with "the existence of the arrest warrants." <u>Id.</u> at 194. The court also decided that even if the testimony was false, "the evidence underlying the arrest warrants was admitted at trial and was used by appellant on cross-examination of both officers. This is not a situation wherein the State allowed a witness to give false testimony which defense counsel had no means of correcting." <u>Id.</u> (citations and quotations omitted). Because Stephens presented no new evidence that was inconsistent with the decision of the Georgia Supreme Court, the state habeas court held that Stephens could not relitigate an issue that had been decided on direct appeal and denied him relief.

## 3. Application of Clearly Established Federal Law

Although we presume that the decision of the Georgia Supreme Court that

Detective Johnson's testimony was not false is correct, Stephens may rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e). Detective Johnson admitted in the hearing on the motion for a new trial and in the state habeas hearing that Jackson identified Ragin in a photographic lineup as the man who shot Davis and there were outstanding arrest warrants for Ragin and Williams, but Johnson testified at trial that no other suspects had been named as a potential shooter. We agree with the magistrate judge that "[t]his testimony [of Johnson at trial] appears to be false, given the existence of the arrest warrants for Ragin and Williams," and that "it is difficult to conclude that Grace did not knowingly use this testimony."

The Georgia Supreme Court also decided that, even assuming the testimony was false, it was not material to the outcome of Stephens's trial, and after a thorough examination of the trial and post-conviction records, we conclude that this decision was not an unreasonable application of clearly established federal law. Stephens had Jackson's statement, which was used to support the issuance of the arrest warrants. This statement was admitted into evidence and Stephens's counsel used this statement to cross-examine Detective Johnson. During this cross-examination, Detective Johnson admitted that Jackson identified Ragin as the man who shot John Davis. The false testimony was both known to be false by the

21

defense and proved false on cross-examination.

Although we agree with the magistrate judge that Grace "played fast and loose" with her ethical duties, we cannot say that any false testimony clearly rose to the level of a due process violation. The decision of the Georgia Supreme Court was not an unreasonable application of clearly established federal law. The district court, therefore, properly denied the petition for federal habeas corpus relief.

## IV. CONCLUSION

Despite the failure of the prosecutor to fulfill her responsibilities, Stephens has not demonstrated that the Georgia courts unreasonably applied clearly established federal law regarding the suppression of the arrest warrants for other suspects and the presentation of false testimony at trial. As to each issue, the decision of the state courts that Stephens was not denied due process was not objectively unreasonable. The denial of the petition for writ of habeas corpus is, therefore,

**AFFIRMED.**