[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 13, 2011
JOHN LEY
CLERK

_____

No. 09-15199

_____

D. C. Docket No. 04-00308-CR-BAE

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES BOWE,

Defendant-Appellant.

_____

No. 09-15261

_____

D. C. Docket Nos. 08-00033-CV-BAE-4
04-00308-CR-BAE

CHARLES ALEXANDER BOWE,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Georgia
_____

(May 13, 2011)

Before TJOFLAT, WILSON and RIPPLE,[*] Circuit Judges.

PER CURIAM:

On August 3, 2005, Charles Bowe, a Bahamian businessman, was convicted of conspiring to import, possess, and distribute five or more kilograms of cocaine, along with the related substantive offenses of importing and possessing with intent to distribute five or more kilograms of cocaine. Following his conviction, Bowe pursued post-conviction relief under 28 U.S.C. § 2255 and moved for a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"). The district court denied both motions. Bowe appeals those rulings to this Court, and we affirm.

I.

The Government's case against Bowe was built around the testimony of co-conspirator Damian Coverley. In 2004, Coverley was caught red-handed by law enforcement receiving a shipment of eight kilograms of cocaine flown into Savannah, Georgia by a government informant. He immediately began

_____

[*] Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

cooperating with law enforcement. In the words of the magistrate judge below in his Report and Recommendation ("R&R") to the district court:

> Following his arrest upon receiving 8 kilograms of cocaine flown into Savannah aboard a private plane piloted by Robert Nylund, Coverley identified Bowe as the financier of the drug importation scheme and cooperated with the agents in making numerous recorded conversations with Bowe. These conversations, Coverley explained, involved certain code terms for the cocaine transaction, including the number of kilograms involved and the proceeds received from the sale. At the agents' behest, Coverley also engaged in a face-to-face meeting with Bowe at a Home Depot parking lot in Weston, Florida to make a controlled delivery of the cash proceeds. During that meeting (secretly recorded by the agents), Bowe and Coverley discuss [sic] "the 8" and the fact that 3 of "the 8" were no good (which Coverley offered as an explanation for receiving only "90" for the sale).

R&R at 34 n.22 (citations omitted). After Coverley delivered the cash, Bowe was arrested and prosecuted.

According to his trial testimony, Coverley conspired with Bowe, a man named Omar Theophilus, and others over a period of several years to procure cheap narcotics from sources throughout South and Central America, smuggle them into the United States via the Bahamas, and sell them for profit. Bowe allegedly financed these operations, receiving the proceeds from the sales after Coverley smuggled the drugs into the United States and sold them. The recorded

3

communications between Bowe and Coverley were played for the jury, and Coverley testified that the coded conversations referred to the sale of cocaine. At the conclusion of the trial, the jury found Bowe guilty of the aforementioned offenses.

II.

We begin by addressing Bowe's claim that he was denied effective assistance of counsel in violation of his rights under the Sixth Amendment. See generally Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). The district court denied this claim on its merits. When reviewing the denial of a § 2255 motion, we review the district court's findings of fact for clear error and its conclusion of law de novo. Rhode v. United States, 583 F.3d 1289, 1290 (11th Cir. 2009) (per curiam).

Following Bowe's indictment, his attorney worked with prosecutors to negotiate a plea agreement. Allegedly, counsel failed to prepare for trial, in the event that a suitable plea agreement could not be reached. Though counsel secured an acceptable plea offer from the Government shortly before the trial date, the trial court indicated it would not accept a plea agreement that limited its discretionary ability to consider the full range of Bowe's relevant conduct (i.e., the aggregate weight of any drugs found to be part of the same conspiracy) when determining

4

Bowe's sentence.  Consequently, Bowe chose to take his chances at trial.

Given counsel's admitted lack of trial preparation, Bowe immediately hired a seasoned trial attorney out of Atlanta.[1]  Bowe's new counsel succeeded in securing a brief continuance, but was unable to obtain further extensions of time or leave from the court to depose out-of-jurisdiction witnesses.  As a result, Bowe claims he was forced to proceed to trial woefully unprepared.

Bowe further alleges that not only were his attorneys unprepared, but they were unable to make full use of what few preparations they had made.  Counsel allegedly informed several trial witnesses that they would not need to be present until day three of the trial.  The trial, however, moved more quickly than expected.  Though counsel allegedly attempted to stall by presenting several "filler" witnesses, Bowe was ultimately forced to rest his case before all of his witnesses arrived.[2]

Bowe claims these unprofessional errors violated his Sixth Amendment rights.

### A.

The federal law governing ineffective-assistance-of-counsel claims is well

---

[1] Bowe also retained the services of his original attorney and hired local counsel.

[2] We note that the district court was highly skeptical that Bowe was actually having logistical difficulty producing said witnesses.

settled.  See generally Strickland, 466 U.S. 668.  "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense."  Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527 (2003) (citing Strickland, 466 U.S. at 687).  Under the performance prong, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms."  Strickland, 466 U.S. at 688.  Under the prejudice prong, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

## B.

At bottom, this case turns on whether Bowe's allegations undermine our confidence in the outcome of the proceedings.  See Strickland, 466 U.S. at 694 (defining "prejudice").  The district court assumed counsel had committed unprofessional errors, but determined that Bowe could not demonstrate that, but for those errors, there was a reasonable likelihood that the outcome of the trial would have been different.[3]  See id.  We find no error in its thorough analysis.

Much of the evidence Bowe offered to support his ineffective-assistance

---

[3] The district court adopted the magistrate judge's R&R as its opinion.

6

claim—such as that contained in the declarations of Marvin Miller, Phillip Miller, and Christine Bowe—would have been relevant and somewhat probative at trial by calling into question minor aspects of Coverley's narrative. However, for the reasons stated in the magistrate's R&R, its probative value simply falls short of the Strickland prejudice threshold. Likewise, the Troy Johnson, Franz Bowe, T. Laramore, and Omar Moore evidence—while slightly probative—adds little to Bowe's efforts to satisfy his prejudice burden.[4] Finally, the district court properly excluded the remaining evidence offered via the declaration of Bowe's § 2255 investigator as incompetent hearsay.[5] As noted by the magistrate and emphasized

_____

[4] We cannot agree with the Government's contention that we must completely disregard this evidence because it impeaches statements not made at trial.

First of all, one impeaches witnesses, not statements. Second, though it is true that the defense would have had to lay the proper foundation to establish this evidence's relevance—viz. establish in the record that Coverley had made the statements the defense sought to prove false—having done so, it would certainly have been entitled to attack Coverley's credibility by demonstrating that his narrative to law enforcement contained falsehoods.

[5] Bowe argued that various statements of co-conspirator Omar Theophilus, offered second-hand through his investigator's affidavit, should come in as "statements against interest" falling within Federal Rule of Evidence ("FRE") 804(b)(3)'s exception to the hearsay bar. The district court disagreed, declaring that "saying that another was not involved is not the same as saying oneself was involved." R&R at 31. Bowe argues that this ruling ignores a critical aspect of Theophilus's alleged statement not covered by the court's rationale: his claim that the drugs for the 2004 transaction were "fronted," as opposed to purchased. This description of Theophilus's crime, Bowe argues, qualifies as a statement against interest and eviscerates Coverley's claim that Bowe financed the drug purchase. "Fronted" drugs, by definition, are not purchased. Additionally, DEA agent Kevin Byrnes testified that he believed the drugs had been fronted, providing the requisite corroboration required under the Federal Rules.

While the question is a close one, we believe the statement in question does not qualify as a statement against interest under FRE 804(b)(3). In Williamson v. United States, 512 U.S. 594, 114 S. Ct. 2431 (1994), the Supreme Court opted for a narrow construction of what statements qualify for the exception, limiting its application to specific statements or remarks

7

by the district court, Coverley's accusations were "powerful[ly] corroborated" by the recorded, pre-arrest conversations between Bowe and Coverley. As a result, though Bowe has made some showing that his attorneys' alleged errors could have impacted the trial's result, when viewed collectively, his allegations have not shown that such an impact was reasonably probable.

## III.

Bowe also alleges that the Government suppressed evidence favorable to him that it had a duty to disclose under the Due Process Clause of the Fourteenth Amendment. See generally Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). He pursued relief on this claim via both his § 2255 motion and his separate motion for new trial under Rule 33. Because Bowe's entitlement to relief under

---

that are individually self-inculpatory in the context of broader self-inculpatory narrative and excluding those statements that are merely collateral to those specific, self-inculpatory pieces. Id. at 599. The evaluation of whether any particular statement is, in fact, self-inculpatory is highly context specific. Id. at 604–05. And "[t]he question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'" Id. at 603–04.

Here, we see nothing inherently self-inculpatory about Theophilus's statement that the drugs in question were fronted, as opposed to purchased. That particular fact or remark, while part of a broader self-inculpatory narrative, did not threaten to expose Theophilus to any marginally greater penal culpability, such that a reasonable person who had already admitted to committing the underlying crime would not have made it had it not been true. To the contrary, it might be reasonable to assume that Theophilus, having already admitted his involvement in the crime, would have been more than happy to assist his associate's efforts to exculpate himself by providing this particular statement to Bowe's investigator. In short, the specific remark on which Bowe seeks to rely lacks the necessary hallmarks of 804(b)(3) reliability, post-Williamson.

either motion flows from the same analysis, we address the substance of his

motions together.[6]

A.

After Bowe filed his § 2255 motion, his post-conviction investigator

discovered the existence of tape-recorded conversations between Coverley and a

John Major (the "Major Tapes") that were made after Major was arrested by, and

decided to cooperate with, law enforcement. Bowe sought to amend his motion's

claims under Brady to include consideration of this newly discovered evidence.

The court below purportedly denied Bowe leave to amend his petition, but it did so

in terms that essentially ruled on the merits of the claim as if it had been so

---

[6] In addition to the allegedly suppressed tape recordings discussed below, Bowe argues the statements of Omar Theophilus constitute "new evidence" entitling him to a new trial under Rule 33.

Ordinarily, a petitioner seeking relief under Rule 33 on the basis of newly discovered evidence must show four things:

> (1) that the evidence was newly discovered and was unknown to the defendant[] at the time of the trial;
> (2) that the evidence was material, not merely cumulative or impeaching;
> (3) that it would probably produce an acquittal; and
> (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant[].

United States v. Antone, 603 F.2d 566, 568–69 (5th Cir. 1979). (Note, in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981.)

Here, Bowe has made no showing that he could not have obtained the "evidence" possessed by Theophilus with the exercise of reasonable diligence at the time of trial. Consequently, this claim fails, and the remaining substance of his Rule 33 motion tracks his § 2255 Brady claim.

9

amended.

Bowe argues that the district court erred both in denying him leave to amend his § 2255 motion and in its substantive analysis of the merits of his allegations. He seeks—at a minimum—remand for an in camera review of the Major Tapes. We agree with Bowe that the district court erred by disallowing his amendment;[7] but, we affirm the district court's judgment on the basis that Bowe has not alleged facts demonstrating an entitlement to further proceedings.

B.

1.

Under Brady v. Maryland, prosecutors have a due-process obligation to disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "'Three elements establish a Brady violation: (1) the evidence must be favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice.'" United States v. Naranjo, 634 F.3d 1198, 1212 (11th Cir. 2011) (quoting Stephens v. Hall, 407 F.3d 1195, 1203 (11th Cir. 2005)). "Materiality"

_____

[7] Even the Government concedes the district court should have allowed the amendment.

10

under Brady tracks the prejudice standard under Strickland.  See Jennings v.

McDonough, 490 F.3d 1230, 1243 (11th Cir. 2007) ("The prejudice prong of

Strickland incorporates the same standard used for assessing the materiality of

evidence under Brady, i.e., 'a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'"

(quoting Strickland, 466 U.S. at 694)).

Bowe argues he is entitled to further proceedings on his Brady claim

because he has demonstrated that the Major Tapes are exculpatory or impeaching

of Coverley's testimony, that the Government likely had actual or constructive

knowledge of those tapes, and that disclosure of the Major Tapes could have led to

a reasonable probability that the outcome of the proceeding would have been

different.  The district court concluded that Bowe's argument was lacking with

respect to Brady's second and third prongs, determining that Bowe made an

insufficient showing of the Government's knowledge and the evidence's

materiality.  See R&R, at 70–71, 71 n.39.[8]  We affirm on the basis of the latter

---

[8] We agree with Bowe that the court appears to contradict himself in analyzing whether Bowe was entitled to further proceedings with respect to prong two.   However, this error is inconsequential given the court's alternative, dispositive conclusion regarding materiality.

We disagree with Bowe that the court "did not dispute that the Keith Major evidence was 'material.'"  Petitioner's Brief at 51.  In the Brady universe, "materiality" is a conclusion regarding the quantum of potential prejudice flowing from the suppressed evidence in question.  See United States v. Bagley, 473 U.S. 667, 674–79, 105 S. Ct. 3375 (1985); cf. Cave v. Sec'y for Dept. of Corrs., 11th Cir. 2011, — F.3d — , (No. 09-15602, April 12, 2011) (slip op. at 19–20) (explaining the same in the context of Strickland prejudice).  Footnote 39 of the R&R clearly

11

ruling.

The strength of Bowe's argument in favor of the materiality of the Major Tapes hinges upon his claim that "Coverley's testimony at trial was that Mr. Bowe was 'his only financier' of all the drug transactions in which he (Coverley) engaged since 2001." See Petitioner's Brief at 47 (quoting the district court's Order denying petitioner's Rule 33 motion) (emphasis omitted). The Government disputes that Coverley so testified, asserting at oral argument that the district court's reference was not an independent characterization of Coverley's testimony, but rather a repetition of an assertion made by Bowe in a prior motion that the court merely assumed was true for the purposes of its ruling. Having reviewed the trial transcript, we agree with the Government that Coverley did not testify that Bowe was the sole financier for all of his drug operations.

Though Coverley described Bowe as a financier of his drug operations and testified to facts generally supporting the notion that Coverley relied on Bowe for funds, Coverley's testimony cannot be fairly construed as establishing the specific point that Bowe advances. Consequently, although the alleged content of the Major Tapes—i.e., that Coverley discussed his drug financiers with Major and did not list Bowe among them—retains some probative value for impeachment

states that the court believed the allegedly suppressed evidence was not material.

12

purposes, that value does not rise to the level of materiality under Brady.[9] As a result, Bowe was not entitled to further proceedings on this claim, and we affirm the district court's decision on this front.

2.

Finally, Bowe argues that, even if he is not entitled to relief under the traditional Brady materiality/prejudice standard, he is entitled to relief under the more defense-friendly prejudice standard applicable to cases in which the Government knew or should have known that its case at trial contained a falsehood. See United States v. Antone, 603 F.2d 566, 569 (5th Cir. 1979).[10]

The Supreme Court has long acknowledged that convictions obtained by the knowing use of perjured testimony are fundamentally unfair. See United States v. Agurs, 427 U.S. 97, 103, 96 S. Ct. 2392 (1976); Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173 (1959) ("[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the

---

[9] The same is true with respect to Bowe's sentencing. Though the evidence might be slightly probative with respect Bowe's leadership enhancement, it does not amount to Brady materiality.

[10] Bowe makes this argument solely as part of his Rule 33 case, apparently assuming the relaxed prejudice standard only applies in the Rule 33 context. Although Antone was a Rule 33 case, the exception on which Bowe relies has its foundations in general Due Process Clause jurisprudence and is not limited to Rule 33 motions. See Mooney v. Holohan, 294 U.S. 103, 112–13, 55 S. Ct. 340 (1935); Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173 (1959); Giglio v. United States, 405 U.S. 150, 154–55, 92 S. Ct. 763 (1972).

Fourteenth Amendment." (citing, inter alia, Mooney v. Holohan, 294 U.S. 103, 55 S. Ct. 340 (1935))).  Because such cases "involve a corruption of the truth-seeking function of the trial process," the Court has repeatedly held that defendants' convictions "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  Agurs, 427 U.S. at 103–04 (describing the first of three factual scenarios in which the rule of Brady v. Maryland applies) (emphasis added).[11]  The Supreme Court later clarified that the applicable prejudice standard for these "Agurs Category One" cases is the same as that announced in Chapman v. California, 386 U.S. 18, 87 S. Ct. 824 (1967), where prejudice to the defendant is presumed, unless the error was harmless beyond a reasonable doubt.  See United States v. Bagley, 473 U.S. 667, 679 n.9, 105 S. Ct. 3375 (1985) (equating the "any reasonable likelihood" standard of Agurs with the "harmless beyond a reasonable doubt" standard of Chapman, which requires "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" (internal quotation marks omitted)); United States v. Alzate, 47 F.3d 1103, 1110 (11th Cir. 1995)

_____

[11]  Doctrinally, Agurs's second and third categories of Brady cases have since been combined.  See United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375 (1985); see also Kyles v. Whitley, 514 U.S. 419, 433, 115 S. Ct. 1555 (1995) (describing the effect of Bagley on Agurs and noting the continuing distinction for claims where the prosecution's case contained false testimony of which the prosecution should have known).

14

(analyzing the same and dubbing the applicable prejudice standard the "Napue/Giglio materiality standard").

Bowe argues that the Major Tapes show the Government knew or should have known it was presenting false testimony when Coverley testified that Bowe was his sole financier. We disagree.

For the reasons discussed above, there was no falsehood contained in the Government's case. The record does not reflect that Coverley actually testified that Bowe was his sole financier. As a result, the facts do not place Bowe's case within Agurs's first category, and he retains the burden of showing a reasonable probability that the outcome of his trial would have been different had the Major Tapes been disclosed.[12] The district court erred by assuming for the purposes of its Rule 33 ruling that there had been a falsehood of which Government should have known—an assumption that would have triggered the Agurs Category One exception. However, its ruling (in both the Rule 33 order and its adoption of the magistrate judge's R&R) that there was no reasonable likelihood that the suppressed evidence would have affected the jury's judgment cured any defect in its approach.

---

[12] Here, of course, we address Bowe's burden under the less onerous legal regime of his § 2255 Brady claim. Without qualifying for the Agurs Category One exception as applied to Rule 33 claims in Antone, Bowe bears an even greater burden on his motion for a new trial. See note 6, supra.

## IV.

For these reasons, we affirm the district court's denial of relief on all claims.

**AFFIRMED.**